709 S.E.2d 650

**Roberta Hardy LEWIS, Petitioner,**

v.

**Joseph Terrell LEWIS, Respondent.**

No. 26973.

Supreme Court of South Carolina.

Heard April 20, 2010.

Decided May 9, 2011.

384

Donald Bruce Clark, of Charleston, for Petitioner.

Kevin M. Barth, of Ballenger, Barth and Hoefer, of Florence, and Marian D. Nettles, of Nettles Turbeville & Reddeck, of Lake City, for Respondent.

Justice KITTREDGE.

In this divorce action, the Court granted a writ of certiorari to review two issues in the court of appeals' decision. *Lewis v. Lewis*, 2008–UP–645 (Ct.App.2008). The issues are: (1) the court of appeals' reversal of the family court's determination of the value of the marital home, and (2) the court of appeals' reversal and modification of the family court's award of expert witness fees to Petitioner. We reverse the court of appeals' decision and reinstate the family court's order.[1]

## I.

### Standard of Review

■ "In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. However, this broad scope of review does not require this Court to disregard the findings of the family court." *Eason v. Eason*, 384 S.C. 473, 479, 682 S.E.2d 804, 807 (2009) (citations omitted). More recently, we held that "[a]n appellate court should approach an equitable division award with a presumption that the family court acted within its broad discretion. The family court's award should

---

1. The balance of the court of appeals' decision stands.

be reversed only when the appellant demonstrates an abuse of discretion." *Dawkins v. Dawkins*, 386 S.C. 169, 172–73, 687 S.E.2d 52, 54 (2010).

We take this opportunity to give historical context to the appellate court standard of review of family court factual findings.

## A.

The myriad of modern cases setting forth an abuse of discretion as the standard of review in appeals from the family court may be traced to two common features found in our earlier jurisprudence concerning appeals in equity cases. The primary one is the familiar mantra that the appellate court is not required to disregard the findings of the trial judge who was in a superior position to make credibility determinations. The second concept is the tenet that *de novo* standard of review does not relieve an appellant from demonstrating error in the trial court's findings of fact. *See Crowder v. Crowder*, 246 S.C. 299, 301, 143 S.E.2d 580, 581 (1965) (citing *Forester v. Forester*, 226 S.C. 311, 85 S.E.2d 187 (1954)) ("It is now well settled that this court has jurisdiction in appeals in equity cases to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of a verdict by a jury; and may reverse a factual finding by the lower court in such cases when the appellant satisfies this court that the finding is against the preponderance of the evidence."); *Inabinet v. Inabinet*, 236 S.C. 52, 55–56, 113 S.E.2d 66, 67 (1960) (citing *Twitty v. Harrison*, 230 S.C. 174, 94 S.E.2d 879 (1956)) ("Our duty in equity cases to review challenged findings of fact as well as matters of law does not require that we disregard the findings below or that we ignore the fact that the trial judge, who saw and heard the witnesses, was in better position than we are to evaluate their credibility; nor does it relieve appellant of the burden of convincing this court that the trial judge erred in his findings of fact."); *Gilbert v. McLeod Infirmary*, 219 S.C. 174, 184, 64 S.E.2d 524, 528 (1951) ("We have jurisdiction in appeals in equity to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of verdict by jury."); *Wise v. Wise*, 60 S.C. 426, 449, 38 S.E. 794, 802–03 (1901) (McIver, C.J., dissenting and quot-

ing *Finley v. Cartwright,* 55 S.C. 198, 33 S.E. 359 (1899)) ("Whatever differences of opinion may once have existed as to the rule which should govern where an appellant ... asks this court to reverse the findings of fact by the circuit judge in an equity case, it must now, since the decision in *Finley v. Cartwright* ... be regarded as settled 'that this court may reverse a finding of fact by the circuit court when the appellant satisfies this court that the preponderance of the evidence is against the finding of the circuit court.' ").

■ The family court is a court of equity. Article V, § 5 of the South Carolina Constitution provides in relevant part that our appellate jurisdiction in cases of equity requires that we "review the findings of fact as well as the law." This constitutional provision was adopted as article V, § 4 of the Constitution of 1895.[2] Shortly thereafter, we interpreted this provision and held that "it may now be regarded as settled that this court may reverse a finding of fact by the circuit court [in a case of equity] when appellant satisfies this court that the preponderance of the evidence is against the finding of the circuit court." *Finley,* 55 S.C. at 202, 33 S.E. at 360–61. This language served as the forerunner to the often-quoted language that an appellate court may take its own view of the preponderance of the evidence, as included in the landmark standard of review case, *Townes Associates, Ltd. v. City of Greenville:* "In an action in equity, tried by the judge alone, without a reference, on appeal the Supreme Court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence." 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976) (citing *Crowder,* 246 S.C. 299, 143 S.E.2d 580). Our standard of review, therefore, is *de novo.* Our modern day usage of the term "abuse of discretion" does not comport with our constitutionally authorized standard of review.[3]

---

2. A similar constitutional provision was adopted as article IV, § 4 of the South Carolina Constitution of 1868.

3. As noted, article V, § 5 of the South Carolina Constitution sets forth appellate court jurisdiction in equity cases. The Legislature, shortly after adoption of the 1895 Constitution, codified this principle as Act No. 3, § 15 of the 1896 South Carolina Statutes at Large; this was the precursor to South Carolina Code section 14–3–320. In 1983, the Legislature enacted Act No. 89, 1983 S.C. Acts 160, which amended this statute to restrict the review of the findings of fact of the family

**B.**

The South Carolina family court was created in 1977 as part of the adoption of our unified judicial system.[4] "All single county and multi-county family courts, juvenile courts, domestic relations courts, juvenile and domestic relations courts, shall be abolished on July 1, 1977, and the jurisdiction of such courts devolved upon the statewide family court system as established by this title." S.C.Code Ann. § 14–2–10 (Supp. 2009); *see also* S.C. Const. art. V, § 1 ("The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Court of Appeals, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law.").

Initially, the family courts operated with little statutory guidance and scarce case law. For example, approaches to alimony awards, the division of marital property, and the effect of marital misconduct on dissolution issues found incomplete guidance in the case law. Family court findings in the early years often reflected the court's attempt not only to find facts, but also to discern the law. As a result, appellate court decisions became the primary source of domestic relations law.

Because of the frequent interrelationship of fact and law, there were instances where we exercised our broad equitable standard of review and made findings of fact. When we

---

court "to a determination of whether or not there is substantial evidence to sustain such facts." S.C.Code Ann. § 14–3–320 (1976 & Supp.2009). This language was declared unconstitutional in *Rutherford v. Rutherford*, 307 S.C. 199, 414 S.E.2d 157 (1992). In answering the question of "what is the proper standard of appellate review in domestic actions from the family courts," *Rutherford* held that "[i]n appeals from all equity actions including those from the Family Court, the appellate court has authority to find facts in accordance with its own view of the preponderance of evidence." *Id.* at 201, 204, 414 S.E.2d at 158, 160.

4. The statewide system of family courts was established through enactment of Act No. 690, 1976 S.C. Acts 1859. Prior to 1977, some counties had county family court judges, yet much of the domestic relations docket was handled by the circuit court judges. The circuit court judges generally handled their domestic relations cases on Saturday mornings in an assembly line fashion, trying to do what was equitable without the benefit of uniform and developed legal criteria. Modern day complexities of domestic relations law were unheard of then.

reversed a family court's finding based on *de novo* review, we often said the family court "abused its discretion." *See Shalu-ly v. Shaluly*, 284 S.C. 71, 74, 325 S.E.2d 66, 67 (1985) (where the family court failed to make findings, this Court made its own findings and observed, "we have studied the record and listened to the arguments of counsel and reached the decision that the judge abused his discretion in failing to allocate the wife a more abundant portion of the property she helped to accumulate"); *Lide v. Lide*, 277 S.C. 155, 158, 283 S.E.2d 832, 834 (1981) (weighing the evidence and concluding, "the trial judge abused his discretion in denying alimony to the wife").

■ Nevertheless, this Court and the court of appeals generally sustained (and continue to sustain) family court findings of fact, notwithstanding our constitutional imprimatur for *de novo* review. The tendency to affirm family court findings of fact may be traced to the two features noted above—the superior position of the trial judge to determine credibility and the appellant's burden to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court. *See Wilson v. Wilson*, 285 S.C. 481, 483, 330 S.E.2d 303, 304 (1985) (citing *McAlister v. Patterson*, 278 S.C. 481, 299 S.E.2d 322 (1982)) ("Although our scope of review allows us to find the facts in accordance with our view of the preponderance of the evidence, we give broad discretion to the family court judge who has observed the witnesses and is in a better position to judge their demeanor and veracity."); *Perry v. Perry*, 301 S.C. 147, 149, 390 S.E.2d 480, 481 (Ct.App. 1990) (citing *Ray v. Ray*, 296 S.C. 350, 372 S.E.2d 910 (Ct.App.1988)) ("The Court of Appeals has jurisdiction in a divorce case to find facts based on its own view of the preponderance of the evidence; however, it is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to evaluate their testimony."); *Sealy v. Sealy*, 295 S.C. 281, 283, 368 S.E.2d 85, 87 (Ct.App.1988) (finding the appellate court had "ample evidence to support the trial judge's finding").[5] Stated different-

---

5. Adhering to the factual findings of the family court because of its superior position to judge the witnesses' demeanor and veracity is not unique to the family court. We have often cited to that principle in a host of equitable matters where we have the authority to take our own view of the evidence. *See, e.g., Pinckney v. Warren*, 344 S.C. 382, 387–

ly, *de novo* review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court. The presence of *de novo* review and a willingness, after review, to defer to the fact finder should not be viewed as contradictory positions.

## C.

The tendency to sustain family court findings continued as the General Assembly began to pass legislation to provide guidelines to family court judges in the exercise of their enormous responsibility and discretion.[6] With the benefit of

88, 544 S.E.2d 620, 623 (2001) (regarding a quiet title action: "In an appeal from an action in equity, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. However, this broad scope of review does not require an appellate court to disregard the findings below or ignore the fact that the trial judge is in the better position to assess the credibility of the witnesses. Moreover, the appellant is not relieved of his burden of convincing the appellate court the trial judge committed error in his findings." (citations omitted)); *U.S. Bank Trust Nat'l Ass'n v. Bell*, 385 S.C. 364, 373, 684 S.E.2d 199, 204 (Ct.App.2009) (citing *Lowcountry Open Land Trust v. Charleston S. Univ.*, 376 S.C. 399, 407, 656 S.E.2d 775, 779 (Ct.App. 2008)) (regarding a mortgage foreclosure action: "In an appeal from an action in equity, tried by a judge alone, we may find facts in accordance with our own view of the preponderance of the evidence."); *Clardy v. Bodolosky*, 383 S.C. 418, 424, 679 S.E.2d 527, 530 (Ct.App. 2009) (quoting *Greer v. Spartanburg Technical Coll.*, 338 S.C. 76, 79, 524 S.E.2d 856, 858 (Ct.App.1999)) (regarding an action for specific performance: " 'In reviewing a proceeding in equity, this court may find facts based on its own view of the preponderance of the evidence. This broad scope of review does not require this court to ignore the findings below when the trial court was in a better position to evaluate the credibility of the witnesses.' "); *Straight v. Goss*, 383 S.C. 180, 192, 678 S.E.2d 443, 449 (Ct.App.2009) (regarding a shareholder derivative action: "[T]his court may find facts in accordance with our own view of the preponderance of the evidence. However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." (citations omitted)); *Laughon v. O'Braitis*, 360 S.C. 520, 524–25, 602 S.E.2d 108, 110 (Ct.App.2004) (regarding an action for partition: "In an appeal from an equitable action, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. However, this broad scope of review does not require this court to disregard the findings at trial or ignore the fact that the trial judge was in a better position to assess the credibility of the witnesses." (citations omitted)).

6. These statutes are found in the South Carolina Code, Title 20 (1976 &

increasing legislative standards in many areas, family court disputes evolved to be more and more fact-driven as appellate courts were called on less to declare the law. As the family court system has matured, while retaining our constitutional authority to make our own findings of fact, appellate court decisions have continued to reflect a preference to sustain a family court's factual findings.

The highly fact-intensive nature of family court matters lends itself to a respect for the factual findings of our able and experienced family court judges who are in a superior position to assess the demeanor and credibility of witnesses. Indeed, life-altering credibility determinations often lie at the heart of family court factual findings. However, neither our respect for the family court bench nor the special need for finality in family court litigation may serve as a license to lessen our standard of review in family court appeals.

██ "An abuse of discretion occurs when the decision is controlled by some error of law or is based on findings of fact that are without evidentiary support." *Eason*, 384 S.C. at 479, 682 S.E.2d at 807. *De novo* review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the trial court's findings. We must acknowledge that the term "abuse of discretion" is a misnomer in light of the authorized *de novo* review in article V, § 5 of the South Carolina Constitution.

---

Supp.2009) and Title 63 (2010). *See, e.g.,* S.C.Code Ann. § 20–3–130 (alimony; enacted by Act No. 137, 1949 S.C. Acts 216; amended in 1990 to specify factors for determining an alimony award); § 20–3–620 (equitable apportionment of marital property; enacted by Act No. 522, 1986 S.C. Acts 3264); § 63–3–530 (family court jurisdiction; enacted by Act No. 690, 1976 S.C. Acts 1859); § 63–3–550 (standing to institute a proceeding regarding a neglected or delinquent child; enacted by Act No. 71, 1981 S.C. Acts 121); § 63–3–620 (penalties for violating a family court order; enacted by Act No. 71, 1981 S.C. Acts 121); § 63–5–30 (rights and duties of parents regarding their minor children; enacted by Act No. 398, 1982 S.C. Acts 2391); § 63–7–10 (child protection services; enacted by Act No. 1068, 1972 S.C. Acts 2231); § 63–7–620 (emergency protective custody; enacted by Act No. 71, 1981 S.C. Acts 121); § 63–7–2510 (termination of parental rights; enacted by Act No. 1540, 1972 S.C. Acts 2817); §§ 63–15–300 to 63–15–322 (Uniform Child Custody Jurisdiction and Enforcement Act; enacted by Act No. 60, 2007 S.C. Acts 250); § 63–17–310 (enforcement of child support orders; enacted by Act No. 198, 1987 S.C. Acts 2208).

■ We are nevertheless persuaded that the inartful use of an abuse of discretion deferential standard of review merely represents the appellate courts' effort to incorporate the two sound principles underlying the proper review of an equity case. As discussed above, those two principles are the superior position of the trial judge to determine credibility and the imposition of a burden on an appellant to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court. Those principles are consistent with our historic approach to *de novo* review. This is the appropriate frame of reference for construing the abuse of discretion language in family court cases.[7]

### D.

■ This approach to reviewing family court factual findings for an abuse of discretion may be seen in the primary issues before us today, equitable division and property valuation. Typical of our pronouncements is: "Family court judges have wide discretion in determining how marital property is to be distributed. They may use any reasonable means to divide the property equitably, and their judgment will not be disturbed absent an abuse of discretion." *Murphy v. Murphy*, 319 S.C. 324, 329, 461 S.E.2d 39, 41–42 (1995). Although statutory factors provide guidance, there is no formulaic approach for determining an equitable apportionment of marital property. Similarly, as for a family court's finding of a marital asset's value, "[d]etermination of fair market value is a question of fact." *Payne v. Holiday Towers, Inc.*, 283 S.C. 210, 215, 321 S.E.2d 179, 182 (Ct.App.1984). Consequently, we have recognized the presence of discretion in the family court in valuing marital property and in effecting a division of marital property that is equitable under the circumstances.

---

7. We reiterate that appellate deference to factual findings in an equitable action is not mandatory. We do not, however, perceive any conflict between our *authority* to make findings of fact and our tendency to sustain family court factual findings when the appellant fails to satisfy the appellate court that the preponderance of the evidence is against the finding of the family court. This juxtaposition of the constitutionally authorized *de novo* review and our tendency, after review, to uphold family court findings is seen in the expression that the appellate court is not required to disregard the findings of the trial judge who was in a superior position to make credibility determinations.

This acknowledgement of discretion should not be construed as an abandonment of our authority to make our own findings of fact.

In sum, while retaining the authority to make our own findings of fact,[8] we recognize the superior position of the family court judge in making credibility determinations. Moreover, consistent with our constitutional authority for *de novo* review, an appellant is not relieved of his burden to demonstrate error in the family court's findings of fact. Consequently, the family court's factual findings will be affirmed unless "appellant satisfies this court that the preponderance of the evidence is against the finding of the [family] court." *Finley*, 55 S.C. at 202, 33 S.E. at 360–61.

## II.

## Value of Marital Residence

Petitioner retained an expert real estate appraiser to render an opinion on the value of the parties' former marital residence, a plantation home in Williamsburg County. Without objection, the appraiser assigned a value of $800,000. The appraiser provided detailed evidence supporting his methodology and selection of comparable properties. Petitioner additionally introduced the appraiser's comprehensive report into evidence without objection. Respondent offered only cursory valuation evidence and focused almost exclusively on disputing the appraiser's value.[9] Petitioner contends the family court

8. *McCrosson v. Tanenbaum* is an example of the appellate court exercising its authority to make its own findings of fact and reversing the family court. 375 S.C. 225, 652 S.E.2d 73 (Ct.App.2007), *af'd in part and vacated in part*, 383 S.C. 150, 679 S.E.2d 172 (2009). This Court affirmed the court of appeals' reversal of the family court, but noted that "although the standard of review in such cases is broad, an appellate court should be reluctant to substitute its own judgment for that of the family court." *McCrosson*, 383 S.C. at 151, 679 S.E.2d at 172, n. 1.

9. Respondent's brief conceded the appraiser's qualification: "Husband does not contend that Mr. Hartnett is not an expert. Clearly, Mr. Hartnett has excellent credentials and has been qualified as an expert on many occasions." On his financial declaration, Respondent listed the value of the marital residence at $400,000, but he testified at trial to a value of $350,000.

acted within its discretion when it accepted the appraiser's value of $800,000. We agree.

The court of appeals adopted Respondent's challenge to the appraiser's sales comparison approach, expressed "sympathy" for Respondent's "concerns," and found "the family court's finding about the worth of the marital home is not supported by the record." [10] We have reviewed the record, under our *de novo* review, and find evidence to support the $800,000 value. Beyond a superficial presentation for a substantially lower value, Respondent elected to approach the valuation issue by challenging the appraiser's valuation. Under the facts presented, we reject Respondent's contention that the appraiser's valuation is not entitled to weight. Respondent has failed to demonstrate error in the family court's valuation. We, therefore, decline to alter the factual finding of the family court.[11]

■■■ "The family court has broad discretion in valuing the marital property. A family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented." *Pirri v. Pirri*, 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct.App.2006) (citation omitted). "We have stated before, and we reiterate here, that a party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the family court's findings." *Honea v. Honea*, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct.App.1987) (citing *Cox v. Cox*, 290 S.C. 245, 349 S.E.2d 92 (Ct.App.1986)); *see also Hough v. Hough*, 312 S.C. 344, 440 S.E.2d 387 (Ct.App.1994); *Hudson v. Hudson*, 294 S.C. 166, 363 S.E.2d 387 (Ct.App.1987). Because Respondent has failed

---

10. We respectfully disagree with the dissent's characterization that the court of appeals reversed "because it found the family court committed an error of law." The court of appeals treated the issue as one of fact.

11. There is another consideration at play here. The court of appeals understood that Respondent's cursory evidence precluded it from definitively finding a value for the home that was below the appraiser's recommendation. The court of appeals admitted it was "sympathetic to Husband's concerns." The court of appeals' remand instructions invited the family court to "accept additional evidence ... or order supplemental information on its own motion." Given Respondent's incomplete presentation at trial, it would be fundamentally unfair to Petitioner to give Respondent a second bite at the apple.

to establish error in the family court's valuation, we reverse the court of appeals.

## III.

### Expert Witness Fees

The family court ordered Respondent to pay Petitioner $23,066.25 for expert witness fees. The court of appeals accepted Respondent's "alternative that these fees be prorated in the same percentages as the equitable division award itself." *Lewis*, 2008–UP–645 at 7. The family court awarded fifty-five percent of the marital property to Respondent and forty-five percent to Petitioner. Petitioner contends the family court acted within its discretion in ordering Respondent to pay expert witness fees of $23,066.25.

"The decision of whether to award expert witness fees, like the decision to award attorney fees, rests within the sound discretion of the family court." *Brunner v. Brunner*, 296 S.C. 60, 62, 370 S.E.2d 614, 616 (Ct.App.1988). The family court found the various experts credible and accepted their valuations. Moreover, the court noted that the experts' valuations were material to the relief Petitioner sought and obtained. We further note the large disparity in the parties' incomes—Respondent makes $24,000 per month, while Petitioner makes $436 per month. We concur in the family court's allocation of expert witness fees. The contrary decision of the court of appeals is reversed.

**REVERSED.**

BEATTY and HEARN, JJ., concur. TOAL, C.J., concurring in a separate opinion in which KITTREDGE, J., concurs. PLEICONES, J., dissenting in a separate opinion.

Chief Justice TOAL.

I concur with the majority's excellently researched opinion. I write separately to note my disagreement with the dissent's contention that the standard of *de novo* appellate review of facts in an equity case changes when this Court reviews a case pursuant to a grant of a writ of certiorari, rather than on appeal. The dissent would hold that, when we review equita-

ble actions pursuant to a writ of certiorari, we may only correct errors of law or findings of fact that are wholly unsupported by the evidence.[12]

Since this Court's decision in *Finley v. Cartwright*, 55 S.C. 198, 33 S.E. 359 (1899), our scope of review in equitable actions, including domestic relations actions, has been well-settled and consistently applied. *Rutherford v. Rutherford,* 307 S.C. 199, 203, 414 S.E.2d 157, 160 (1992) ("This interpretation [of the Court's scope of review in equitable actions] has been consistently applied to all equity cases, including domestic actions, since *Finley*."); *Finley,* 55 S.C. 198, 33 S.E. at 360–61 (in equitable matters, when "reviewing questions of fact under the constitution of 1895, it may now be regarded as settled that this court may reverse a finding of fact by the circuit court when the appellant satisfies this court that the preponderance of the evidence is against the finding of the circuit court."); *see also, e.g., Fisher v. Tucker,* 388 S.C. 388, 391, 697 S.E.2d 548, 550 (2010) ("[T]he appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence."); *Patel v. Patel,* 359 S.C. 515, 522–23, 599 S.E.2d 114, 118 (2004) ("Where a family court order is appealed, we have jurisdiction to find facts based on our own view of the preponderance of the evidence."); *Clinkscales v. Clinkscales,* 275 S.C. 308, 310, 270 S.E.2d 715, 716 (1980) ("This Court has jurisdiction, on an appeal from an order of the Family Court, to find facts in accordance with its

---

12. The dissent provides support for this position by citing two non-equitable cases: *Hollman v. Woolfson,* 384 S.C. 571, 577, 683 S.E.2d 495, 498 (2009) (where the Court issued a writ of certiorari to the trial court to review a discovery order based on exceptional circumstances and stated "[o]n certiorari, this Court will review only errors of law and will not review factual findings unless wholly unsupported by the evidence") and *Turner v. State,* 384 S.C. 451, 453, 682 S.E.2d 792, 793 (2009) (where the Court granted a writ of certiorari to the PCR court to review that court's denial of relief to petitioner and stated "on certiorari, the PCR court's ruling should be upheld if it is supported by any evidence of probative value in the record," and the Court will reverse when "[the PCR court] is controlled by an error of law" (internal citations omitted)). In my view, despite the Court's inclusion of the phrase *"on certiorari,"* these opinions do nothing to advance the dissent's position that *because* this Court issues a writ of certiorari in an equity case, it follows that the Court *must* limit its scope of review to the correction of errors of law and the correction of factual errors only if the facts are unsupported by the evidence.

own view of the preponderance or greater weight of the evidence, and may reverse factual finding by lower court when appellant satisfies the Court that the finding is against the preponderance of the evidence."); *Simonds v. Simonds*, 232 S.C. 185, 205, 101 S.E.2d 494, 504 (1957) ("This Court has the authority in appeals in equity to find the facts in accord with our own view of the preponderance or greater weight of the evidence, and we may reverse a finding of fact by the Circuit Court when an appellant satisfies this Court that the preponderance of the evidence is against the finding of the Circuit Court."); *Wise v. Wise*, 60 S.C. 426, 38 S.E. 794, 802–03 (1901) (McIver, C.J., dissenting and quoting *Finley*, 55 S.C. 198, 33 S.E. 359) ("Whatever differences of opinion may once have existed as to the rule which should govern where an appellant, as in this case, asks this court to reverse the findings of fact by the circuit judge, in an equity case, it must now, since the decision in *Finley v. Cartwright*, be regarded as settled 'that this court may reverse a finding of fact by the circuit court when the appellant satisfies this court that the preponderance of the evidence is against the finding of the circuit court.' " (internal citations omitted)); *Sylvester–Bleckley Co. v. Goodwin*, 51 S.C. 362, 29 S.E. 3, 4 (1898) ("In a case in equity this court will reverse a finding of fact by the circuit court when the appellant satisfies this court that the preponderance of the evidence is against the finding of the circuit court.").

Likewise, in numerous equitable matters before this Court pursuant to a grant of a writ of certiorari, the Court has applied a *de novo* standard of review. *See, e.g., Ables v. Gladden*, 378 S.C. 558, 564, 664 S.E.2d 442, 445 (2008)(on writ of certiorari in domestic relations cases, this Court may find facts in accordance with its own view of the preponderance of the evidence); *Goldman v. RBC, Inc.*, 369 S.C. 462, 465, 632 S.E.2d 850, 851 (2006) (because an action to quiet title is equitable in nature, the Court could find facts in accordance with its own view of the preponderance of the evidence); *Wooten v. Wooten*, 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005) (stating on writ of certiorari in a domestic relations case, "an appellate court has the authority to find the facts in accordance with its own view of the preponderance of the evidence"); *Williams v. Wilson*, 349 S.C. 336, 339–40, 563 S.E.2d 320, 322 (2002) (because the main purpose of the underlying

action for declaratory relief was to enjoin a party from taking an action in the future, the action for declaratory judgment was said to be equitable in nature, and therefore, the Court could take its "own view of the preponderance of the evidence"); *Taylor v. Lindsey,* 332 S.C. 1, 3 n. 2, 498 S.E.2d 862, 863 n. 2 (1998) (on writ of certiorari, an action to enforce a restrictive covenant by injunction was equitable, so the Court was entitled to "find facts in accordance with its own view of the evidence."); *Rutherford,* 307 S.C. at 204, 414 S.E.2d at 160 ("In appeals from all equity actions including those from the Family Court, the appellate court has authority to find facts in accordance with its own view of the preponderance of the evidence.").

While I appreciate the dissent's effort to distinguish the various means by which this Court may exercise appellate review, our cases do not require the Court to apply a particular standard of review in equity actions because we choose to grant a writ of certiorari. In the very case cited by the dissent in support of this proposition, *City of Columbia v. S.C. Public Service Commission,* 242 S.C. 528, 131 S.E.2d 705 (1963), the Court explained the attributes of the common law writ of certiorari:

> At common law the writ of certiorari is used for two purposes: (1) As an appellate proceeding for the re-examination of some action of an inferior tribunal. (2) As an auxiliary process to enable the Court to obtain further information with respect to some matter already before it for adjudication.
>
> While certiorari has been said to be original in nature, it has also been said to be appellate. It may be said, indeed, to have characteristics of both. For example, to the extent that it involves the review of the proceedings of an inferior court, certiorari is an appellate proceeding, but to the extent that the subject matter of the proceeding brought before the appellate court will not be reinvestigated, tried, or determined on the merits as on appeal or writ of error, it is an original proceeding.

242 S.C. at 534, 131 S.E.2d at 708 (citations omitted). When reviewing the decision of an inferior tribunal "on certiorari" or "on appeal," the writ is said to be appellate in nature. *Id.* ("An appeal is a review by a superior court of some proceeding

held in an inferior tribunal. The method of review may be called appeal or certiorari and be classified as an appellate proceeding....”); *Rowe v. City of W. Columbia*, 334 S.C. 400, 404, 513 S.E.2d 379, 381 (Ct.App.1999) (“[W]hen a court is reviewing some proceeding held in a lower tribunal, the proceeding is an appellate proceeding, regardless of the title given the proceedings by the reviewing court.”). In my view, our standard of review in a particular case depends on the nature of the underlying action and has little to do with the semantics concerning the method by which the case reaches the Court.

As noted above, in an appeal from the family court before this Court pursuant to a grant of a writ of certiorari, where the action is equitable in nature, this Court may find facts in accordance with its own view of the preponderance of the evidence. To hold otherwise would convert all equitable matters before this Court on a writ of certiorari into matters of law, which result is not only contrary to longstanding precedent, but is also in derogation of our state constitution.[13] *See* S.C. Const. art. V, § 5 (providing that in equity appeals, the Court “shall review the findings of fact as well as the law, except in cases where the facts are settled by a jury and the verdict not set aside”); *RV Resort & Yacht Club Owners Ass’n, Inc. v. BillyBob’s Marina, Inc.*, 386 S.C. 313, 321, 688 S.E.2d 555, 559 (2010) (distinguishing our scope of review in actions at law, in which we will not disturb the trial court’s factual findings unless unsupported by the evidence, and in actions in equity, in which we may find facts in accordance with our own view by a preponderance of the evidence); *Rutherford*, 307 S.C. at 204, 414 S.E.2d at 160 (holding unconstitutional the passage of a statute purporting to limit the constitutionally mandated standard of review in appeals from family court to a determination of whether there was substantial evidence to support the findings of the family court); *Forester v. Forester*, 226 S.C. 311, 315, 85 S.E.2d 187, 188–89 (1954) (rejecting the argument that “the power and jurisdiction of this court over [an] equity case are practically the same

---

13. I also note the dissent’s reasoning would lead to the absurd result wherein the court of appeals had the capability to exercise greater discretion than this Court simply because the case reached that court “on appeal” rather than “on certiorari.”

as if we were reviewing a case at law and that the judgment of the lower court is similar in that aspect to the verdict of a jury" and finding " '[the Court] ha[s] jurisdiction in appeals in equity to find the facts in accord with our view of the preponderance or greater weight of the evidence, in the absence of verdict by jury' " (quoting *Gilbert v. McLeod Infirmary*, 219 S.C. 174, 64 S.E.2d 524, 528 (1951)). Based on the foregoing, I am unable to find any merit in the dissent's rationale.

KITTREDGE, J., concurs.

Justice PLEICONES.

I respectfully dissent. As I find that the Court of Appeals committed no error of law, I would dismiss the writ of certiorari as improvidently granted.

I appreciate the history, set out in the majority, of this Court's review of cases originating in the family courts in South Carolina. The majority focuses its review on the family court and cites the standard for the review of family court findings on appeal. However, as noted by the majority, this case is before this Court by virtue of our issuance of a *writ of certiorari* to review two issues in the *Court of Appeals* decision: (1) the Court of Appeals reversal of the family court's determination of the value of the martial home, and (2) the Court of Appeals reversal and modification of the family court's award of expert witness fees to Petitioner. As explained below, our review on certiorari is confined to an examination of the decision of the Court of Appeals for errors of law or for findings which are wholly unsupported by the evidence. *See Hollman v. Woolfson*, 384 S.C. 571, 577, 683 S.E.2d 495, 498 (2009); *Turner v. State*, 384 S.C. 451, 453, 682 S.E.2d 792, 793 (2009).

In my view, this case requires us to directly address, for the first time,[14] the consequences of Rule 242, SCACR, which

---

14. The Chief Justice maintains that this question is well-settled. Although I agree that myriad decisions on certiorari cite the appeal standard, I am unaware of any case which explicitly addresses the issue I raise today. *Cf. Wallace v. Interamerican Trust Co.*, 246 S.C. 563, 144 S.E.2d 813 (1965) (fact that Court has previously entertained appeals

provides that appellate review by the Supreme Court of decisions of the Court of Appeals is by certiorari. My research convinces me that the first question when determining an appellate tribunal's scope of review is a determination of the method of review, i.e. by appeal or by certiorari. That certiorari and appeal are different methods is recognized by the Constitution [15] as well as by statute.[16] If the method of review is by certiorari, then case law dictates that review is limited to review of errors of law including findings wholly unsupported by the evidence. *E.g. City of Columbia v. S.C. Pub. Serv. C'n,* 242 S.C. 528, 131 S.E.2d 705 (1963); *Carolina, C. & O. Ry. of South Carolina v. Worley,* 102 S.C. 302, 86 S.E. 820 (1915). On the other hand, when the Court's review is by appeal, then the scope of review is governed by the nature of the action, i.e. whether it is at law or in equity. S.C. Const. art. V, § 5; § 14–3–320; § 14–3–330.

The General Assembly provided that there would be no appeal from a decision of the Court of Appeals, and that review of those decisions by this Court, if any, would be by discretionary review. S.C.Code Ann. § 14–8–210 (Supp.2009). As is our prerogative when the legislature provides for our discretionary review, we chose to require that a party seeking review of the lower tribunal's decision do so through a petition for a writ of certiorari. *See Knight v. State,* 284 S.C. 138, 325 S.E.2d 535 (1985) (under pre–1999 version of S.C.Code Ann. § 17–27–100, Court could constitutionally require post-conviction relief appellate review to be by certiorari). I do not seek to alchemize equity into law, but rather to logically apply our constitution, our statutory law, and our established precedent to the novel question of what our scope of review is on certiorari to the Court of Appeals.

from interlocutory orders does not foreclose a finding, when issue is raised, that the order is not directly appealable).

15. S.C. Const. art. V, § 5; *see also Ex parte Childs,* 12 S.C. 111 (1879) (Court had four types of appellate jurisdiction under art. IV, § 4 of 1865 Constitution).

16. *Compare* S.C.Code Ann. § 14–3–310 (1976) (authority to issue writ of certiorari) *with* S.C.Code Ann. § 14–3–320 (Supp.2009) (jurisdiction in appeals from equity) *declared unconstitutional in part, Rutherford v. Rutherford,* 307 S.C. 199, 414 S.E.2d 157 (1992) and § 14–3–330 (jurisdiction in appeals at law).

The Court of Appeals decision reversing the family court's order with regard to valuation of the marital estate should only be overturned if based on an error of law or if wholly unsupported by the evidence. By my reading, the Court of Appeals reversed and remanded the case because it found the family court committed an error of *law* by automatically accepting the expert's opinion. The Court of Appeals held: "In this case ... Husband has expressed valid concerns that the family court automatically accepted the opinion of Wife's appraiser merely because the appraiser was deemed to be an expert and never considered whether that opinion was actually supported by the evidence on which it was purportedly based. *Cf. Sauers v. Poulin Bros. Homes, Inc.*, 328 S.C. 601, 605, 493 S.E.2d 503, 505 (Ct.App.1997) (stating the fact that expert testimony was not directly refuted does not automatically entitle the party offering such testimony to a directed verdict)." With regard to valuation of the marital home, the family court held as follows:

It is well settled law that an owner familiar with his or her property may give his or her opinion of value of the property. However, where an owner is not an expert in the field of real estate appraisals, or one who even "dabbles" in the real estate sales area, I find it would be an abuse of discretion to reject the expert appraisals while adopting the owner's values. I am mindful of Husband's arguments and positions related to the values debate, and I do indeed appreciate the position he takes. However, I do not find that I can or should ignore the values offered by experts in their fields, especially when Husband did not counter those experts' opinions with his experts' values. Husband did offer numerous properties in the area to bolster his argument that the home and tracts are valued too high but I am not a real estate appraiser, and am certainly not versed in the methods of comparing different and similar properties. And just as I cannot "average" values I cannot lower values without credible reasons to do so. As to the experts Wife used at trial, I find them to be experienced, educated in their fields, convincing in their methodology, and credible. I therefore adopt the values each gave to certain pieces and parcels of personal and real property.

In my view, this excerpt from the family court order provides ample support for the ruling of the Court of Appeals. Despite finding the family court's order affected by an error of law, the Court of Appeals exercised its obligation to conduct a *de novo* review of the record to determine if the family court's ruling nonetheless reached a valuation otherwise supported by the evidence. Finding flaws in the evidence presented by Wife's expert, the Court of Appeals declined to assign its own value to the property and instead chose to remand the matter to the family court which, it noted, may accept additional evidence. I can find no error of law in the Court of Appeals assessment of the evidence or in its decision to defer to the family court by remanding the case for further proceedings.

In reversing the Court of Appeals, the majority finds evidence to support the family court's valuation and therefore "decline[s] to alter the factual finding of the family court." As explained above, in my view, the majority's analysis fails to address the issue before this Court, namely whether the Court of Appeals erred in reversing the family court.

Finally, I note that, in support of its decision, the majority also cites cases for the proposition that "a party cannot sit back at trial without offering proof, then come to this Court complaining of the insufficiency of the evidence to support the family court's findings." In my opinion, such cases are inapplicable to the instant case. As the family court discussed in the portion of the order cited above, Respondent disputed the valuation by Wife's expert, offered comparable properties, and stated his own opinion as to what the home was worth. *See Seaboard Coast Line R.R. v. Harrelson*, 262 S.C. 43, 46, 202 S.E.2d 4, 5 (1974) (landowner may testify as to the value of his land).

In my view, the Court of Appeals committed no error of law in reversing and remanding the family court's order. I would therefore dismiss the writ of certiorari as improvidently granted.