**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Jessica Norton and Ronald Whitley, Defendants,

Of whom Ronald Whitley is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2017-001857

———————————

Appeal From York County
James F. Fraley, Jr., Family Court Judge

———————————

Unpublished Opinion No. 2018-UP-229
Submitted May 4, 2018 – Filed June 1, 2018

———————————

**REVERSED**

———————————

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

R. Chadwick Smith, of South Carolina Department of
Social Services, of Rock Hill, for Respondent.

Donae Alecia Minor, of Minor Law Offices LLC, of Fort Mill, for the Guardian ad Litem.

_____

**PER CURIAM:**  Ronald Whitley (Father) appeals an order removing his minor daughter (Child) from his custody.  On appeal, Father argues the family court erred in finding he neglected Child.  We reverse the finding of neglect against Father.

Jessica Norton (Mother) tested positive for benzodiazepines at Child's birth.  At that time, the Department of Social Services (DSS) had another case with Mother and Father (collectively, Parents) involving their two other children.  DSS opened that case against Mother in February 2016 after Mother tested positive for drugs at the birth of another child.  The other children remained in Parents' home, and Father's mother lived with them and acted as the children's protector.  Tiffany Upchurch, an investigator with DSS, stated DSS offered Mother a treatment plan, but Mother had not changed her behavior, and she did not know what progress Parents had made.

Child was transferred to the neonatal intensive care unit at Palmetto Richland Hospital at birth due to medical conditions, and she remained hospitalized for an extended time.  Child's medical conditions required her to use a gastrointestinal (GI) tube and wear a sleep apnea machine.  Upchurch stated the hospital required all parents of medically fragile children to attend training.  The hospital scheduled three dates—April 8, 9, and 11, 2017—for Parents to attend CPR training and learn how to use the GI tube and the sleep apnea machine.  Parents did not attend the training, and DSS filed this removal action two days later.  According to Upchurch, Mother said she could not attend the training because she was arrested on April 9[1] for possession of a controlled substance, and Father said he could not attend "due to his work and with all that had happened with [Mother]."

On cross-examination, Upchurch acknowledged DSS was not seeking a finding against Father for anything related to Mother's pregnancy or Child's birth; she maintained Father neglected Child by not attending the training.  Upchurch admitted Father said he could not attend due to work and Mother being in jail, and Father was "very active in helping care for [their other] children."

Angelica Evans, a DSS foster care worker, also testified DSS's allegations of neglect as to Father related to his failure to attend the classes.  She averred Father

_____

[1] Mother claimed she was arrested on April 8th rather than April 9th.

could have arranged for someone to watch his other children while he travelled from his home in York County to Columbia to take the classes.

Father testified he was self-employed in the heating and air industry and the sole provider for his family. He stated he attended bi-weekly visitation with Child. Father testified the hospital's training classes were scheduled for a weekend, and he learned about them the Tuesday or Wednesday before. He stated he did not attend because Mother was incarcerated and he had to stay home with his other children. Father explained he could not leave the children with his mother because she was seventy-eight years old, had injured her back, and could not lift them. He testified he called the hospital's social worker "and explained the situation." Father stated he was "[a]bsolutely" willing to take the classes and would have taken them the following week, but DSS filed the removal action and Upchurch told him not to contact the hospital. Father acknowledged he could not care for Child without attending the classes but explained, "All I need is for those three training classes to be rescheduled and give me an opportunity to attend those."

The family court found Child was harmed by Mother testing positive for drugs at Child's birth; Child tested positive for buprenorphine, opiates, barbiturates, and benzodiazepines. The family court further found returning Child to Parents' home would place her at an unreasonable risk of harm, Mother physically neglected and physically abused Child, and Father physically neglected Child. Father appealed only the finding that he physically neglected Child.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

Father argues his failure to attend the classes did not constitute neglect. We agree. DSS did not seek a finding against Father for anything related to Mother's pregnancy or Child's birth; rather, DSS believed Father neglected Child by not attending the hospital's training classes.

In finding Father neglected Child, the family court did not state which statutory provision supported its finding of neglect. *See* S.C. Code Ann. § 63-7-20(6) (Supp. 2017) (defining harm or abuse or neglect for purposes of the removal

statute).  Further, we have reviewed section 63-7-20(6) and find Father's failure to attend the training classes does not constitute neglect.  Father's failure to attend the classes did not cause physical or mental injury to Child or create a substantial risk of physical or mental injury to Child because Child was being cared for by the hospital staff at the time.  *See* § 63-7-20(6)(a) (providing harm or abuse or neglect occurs when the parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child").  No evidence showed Child did not have adequate food, clothing, shelter, education, or health care.  *See* § 63-7-20(6)(c) (providing harm or abuse or neglect occurs when the parent fails to provide adequate food, clothing, shelter, education, or health care).  Although there may be circumstances when a parent's failure to attend necessary classes to remove a child from the hospital could constitute abandonment, we find the facts here do not show Father abandoned Child.  *See* § 63-7-20(6)(d) (providing harm or abuse or neglect occurs when the parent abandons the child).  Father stated he learned about the classes less than a week before they were scheduled, and he was unable to attend because Mother was incarcerated and he had to care for his other children.  DSS filed the removal action two days after Father did not attend the classes.  Father expressed a willingness to attend the classes, but he testified DSS told him not to contact the hospital.  Under these facts, we find Father's failure to attend the classes did not constitute abandonment that would support a finding of neglect.  Finally, the record does not contain sufficient evidence showing Father abused or neglected his other children.  *See* 63-7-20(f) (providing harm or abuse or neglect occurs when the parent "has committed abuse or neglect as described in subsections (a) through (e) such that a child who subsequently becomes part of the person's household is at substantial risk of one of those forms of abuse or neglect").[2]  Upchurch stated DSS became involved based on Mother's drug use, and the record does not contain testimony showing Father harmed the other children.  Based on the foregoing, the family court erred in finding Father neglected Child.

**REVERSED.**[3]

**HUFF, GEATHERS, and MCDONALD, JJ., concur.**

---

[2] The remaining subsections of the statute are inapplicable.  *See* § 63-7-20(6)(b) (providing harm or abuse or neglect occurs when a parent "commits or allows to be committed against the child a sexual offense"); § 63-7-20(6)(e) (providing harm or abuse or neglect occurs when the parent encourages the child's delinquency).

[3] We decide this case without oral argument pursuant to Rule 215, SCACR.