**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Breyon Nicquta Warner and Michael Harmon,
Defendants,

Of whom Michael Harmon is the Appellant.

In the interests of minors under the age of 18.

Appellate Case No. 2023-001551

———————————

Appeal From Richland County
Gwendlyne Y. Jones, Family Court Judge

———————————

Unpublished Opinion No. 2024-UP-265
Submitted July 17, 2024 – Filed July 18, 2024

———————————

**AFFIRMED**

———————————

Nancy Carol Fennell, of Irmo, for Appellant.

Kathryn J. Walsh, of South Carolina Department of Social Services, of Spartanburg, for Respondent.

Tiffany J. Lumpkin, of Lumpkin Legal Solutions, LLC, of Columbia; and Angela L. Kohel, of Richland County CASA, of Columbia, both for the Guardian ad Litem.

---

**PER CURIAM:**  Michael Harmon (Father) appeals the family court's order terminating his parental rights to his two minor children.  On appeal, Father argues the family court erred in finding the Department of Social Services (DSS) showed by clear and convincing evidence (1) Father willfully failed to visit the children, (2) Father willfully failed to support Child 2, (3) Father failed to remedy the condition causing the children's removal, (4) the children were harmed, and due to the severity or repetition of the abuse, the home could not be made safe within twelve months, (5) Child 1 had been in foster care for fifteen of the last twenty-two months, and (6) termination of parental rights (TPR) was in the children's best interest.  We affirm pursuant to Rule 220(b), SCACR.

On appeal from the family court, this court reviews factual and legal issues de novo.  *See Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *See Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court the family court erred in its findings.  *Id.* at 385, 709 S.E.2d at 652.

The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and TPR is in the best interest of the child.  *See* S.C. Code Ann. § 63-7-2570 (Supp. 2023).  The grounds for TPR must be proven by clear and convincing evidence.  *See S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

First, clear and convincing evidence showed a child in Father's home was harmed, and due to the severity or repetition of the harm, Father's home was not reasonably likely to be made safe within twelve months.[1]  *See* § 63-7-2570(1) (stating a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed as defined in [s]ection 63-7-20[(6) of the

---

[1] Father and Breyon Nicquta Warner (Mother) shared three children: Child 1 born in 2019, Child 2 born in January 2022, and Child 3 born around October 2021.

South Carolina Code (Supp. 2023)], and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"); § 63-7-20(6)(a)(i) (stating "harm" occurs when the parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child").  On January 19, 2021, Mother took Child 3, who was three months old at the time, to the hospital after she stopped breathing.  The child abuse pediatrician, Dr. LaDonna Young, testified she consulted on Child 3, who had gone into cardiac arrest, been resuscitated, and was on a ventilator at the time of the consult.  Dr. Young explained that testing revealed Child 3 had six rib fractures on her right side and one on her left side, her head CT scan showed a little bit of blood around the brain and a lot of swelling, and there was bruising on her abdomen and scrapes on her neck and nose that were "concerning."  According to Dr. Young, the explanation Mother provided of the events leading up to Child 3's hospitalization did not align with the injuries Child 3 sustained.  She opined Child 3's "rib fractures and the severity of her presentation of illness was consistent with physical abuse."  Dr. Young indicated Child 3's physical injuries were "severe" and that blunt force trauma had been applied to Child 3.  Deputy Coroner Ashley Gurganious testified Child 3's cause of death was anoxic brain injury in association with recurrent non-accidental trauma to the ribs and the manner of death was "homicide."  She testified Child 3 had scarring on "literally her entire abdomen area," which she described as "almost like someone had taken like a knife and just . . . drawn little X's all over her stomach," and bruises on the abdomen as well[] as . . . the left lower leg."  When asked whether Child 3's injuries would be apparent to anyone who did not have special medical expertise, Gurganious indicated the scarring and bruising on Child 3's stomach would "definitely be apparent" and "[y]ou would definitely have some indication that there was some sort of abuse taking place."  She explained Child 3's rib fractures had been in the process of healing but had been re-injured; she agreed that someone who had only been around Child 3 for two days that month "could have caused the re-injury."

Although there is conflicting testimony regarding where Father—who was a long-haul trucker—was domiciled, multiple witnesses testified Father was living with Mother in the home with the children at the time Child 3 died in January 2021, and Father testified he got back into town around January 18, 2021, and was present in the home when Child 3 stopped breathing.  Thus, clear and convincing evidence showed a child in Father's domicile suffered harm.  Moreover, due to the severity of the harm to Child 3, it was unlikely Father's home was likely to be made safe within twelve months.  Accordingly, clear and convincing evidence supports this ground as to Child 1 and Child 2.

Additionally, as to Child 1, we find clear and convincing evidence supports TPR based on Child 1 being in foster care for fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570(8) (Supp. 2023) ("The family court may order [TPR] upon a finding . . . [t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months."). DSS presented evidence Child 1 entered foster care on January 21, 2021, and remained in foster care continuously through the TPR hearing on August 7, 2023. Additionally, there was no evidence DSS prolonged Child's stay in foster care. *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) ("[S]ection 63-7-2570(8) may not be used to sever parental rights based solely on the fact that the child has spent fifteen of the past twenty-two months in foster care. The family court must find that severance is in the best interests of the child, and that the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected."). Accordingly, this court finds clear and convincing evidence showed Child 1 was in foster care fifteen of the most recent twenty-two months.[2]

We hold the family court did not err in finding TPR was in the children's best interest. *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."). In addition to the circumstances surrounding Child 3's death, Child 1 had been in foster care for thirty months—more than half of her life—at the time of the TPR hearing. Child 2, who was removed at birth, had been in foster care his entire life—approximately sixteen months.[3] Both the guardian ad litem and the foster care caseworker testified they believed TPR was in the children's best interest and there was testimony that the children were thriving in their foster placement, which was with their maternal aunt and her fiancé, who both testified regarding their desire to adopt the children.

---

[2] Because we find clear and convincing evidence supports the two grounds discussed, we decline to address Father's arguments against the remaining grounds. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (declining to address additional grounds for TPR when clear and convincing evidence supported TPR on another ground).

[3] DSS did not seek to TPR father on the ground Child 2 had been in foster care for fifteen of the most recent twenty-two months.

**AFFIRMED.**[4]

**WILLIAMS, C.J., and KONDUROS and TURNER, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.