**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

## THE STATE OF SOUTH CAROLINA
### In The Court of Appeals

South Carolina Department of Social Services,
Respondent,

v.

Jennifer Smith and Kemyel Robinson, Defendants,

v.

Jocelyn and Marco Stephens and Van and Lauren James,
Intervenors,

Of whom Jennifer Smith is the Appellant/Respondent

and

Jocelyn and Marco Stephens are Respondents

and

Van and Lauren James are the Respondents/Appellants.

In the interest of minors under the age of eighteen.

Appellate Case No. 2023-000991

--------

Appeal From Spartanburg County
Angela J. Moss, Family Court Judge

--------

Unpublished Opinion No. 2026-UP-257

Heard May 5, 2026 – Filed May 28, 2026

_____

**AFFIRMED**

_____

Jonathan Drew Hammond, of David Martin Law Group, and Bruce Wyche Bannister, of Bannister, Wyatt & Stalvey, LLC, both of Greenville, for Respondent-Appellants Van and Lauren James.

John Brandt Rucker and Allyson Sue Rucker, both of The Rucker Law Firm, LLC, of Greenville, for Appellant-Respondent Jennifer Smith.

James Fletcher Thompson, of Thompson Dove Law Group, LLC, of Spartanburg, for Respondents Marcos and Jocelyn Stephens.

Robert C. Rhoden, III, of Spartanburg, for Respondent South Carolina Department of Social Services.

Wendy Nicole Griffith, of Griffith Family Law Firm, PC, of Spartanburg, for the Guardian ad Litem.

_____

**PER CURIAM:**  This appeal concerns the placement of twin children who were taken into emergency protective custody shortly after birth.  The permanency planning hearing was extensive and involved a substantial record.  The family court carefully considered competing applications from two families who, by all accounts, demonstrated love for the twins and were willing to provide them with stable homes.  Ultimately, however, the family court was required to determine which placement would best serve the twins' interests.

In a detailed oral ruling and written order, the family court thoroughly explained why placement with Uncle and Aunt (Marcos and Jocelyn Stephens) in Florida was most appropriate.  We find no sound basis in this record to disturb the family court's ruling, especially when the South Carolina Department of Social Services (DSS) recommended this placement.  We commend the family court, the parties' excellent counsel, and the families involved for the professionalism and character displayed

despite the inherent difficulty when there are competing claims of this nature. For these reasons, and as explained in more detail below, we affirm.

"On appeal from a matter in the family court, [the appellate] [c]ourt reviews factual and legal issues de novo." *S.C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 67, 814 S.E.2d 148, 151 (2018). However, our broad standard of review does not require us to disregard the family court's superior position to observe the witnesses and assess their demeanor. *Lewis v. Lewis*, 392 S.C. 381, 385, 709 S.E.2d 650, 652 (2011); *see also Dorchester Cnty. Dep't of Soc. Servs. v. Miller*, 324 S.C. 445, 451–52, 477 S.E.2d 476, 480 (Ct. App. 1996) ("Because the appellate court lacks the opportunity for direct observation of the witnesses, it should accord great deference to trial court findings where matters of credibility are involved."). Many cases recognize that credibility determinations play a critical role in family court decisions, particularly when related to the best interests of children. *See Lewis*, 392 S.C. at 390, 709 S.E.2d at 654 (recognizing "life-altering credibility determinations often lie at the heart of family court" decisions); *see also Aiken Cnty. Dep't of Soc. Servs. v. Wilcox*, 304 S.C. 90, 93, 403 S.E.2d 142, 144 (Ct App. 1991) (explaining deference to the findings of the family court is especially appropriate "in cases involving the welfare and best interests of children").

Precedent also recognizes that de novo review does not relieve an appellant's burden of establishing error on appeal. *Lewis*, 392 S.C. at 389, 709 S.E.2d at 654. Instead, an appealing party must persuade us that the preponderance of the evidence is against the family court's findings. *Id.* These principles—our respect for the family court's superior vantage point and the fact that the appellant bears the burden of persuasion—operate in tandem with our standard of review, not in tension with it. *See id.* (emphasizing the "presence of de novo review and a willingness, after review, to defer to the fact finder should not be viewed as contradictory positions"); *id.* at 388, 709 S.E.3d at 653 (explaining our appellate courts' inclination to sustain the findings of the family court are rooted in two principles: "the superior position of the trial judge to determine credibility and the appellant's burden to satisfy the appellate court that the preponderance of the evidence is against the finding of the trial court").

The competing considerations in this case were substantial and closely balanced. The family court considered both placement options as "family" placements. Placement with Foster Parents (Van and Lauren James) would permit the twins to remain with a sibling on their biological mother's side of the family. Placement with Uncle and Aunt would place the twins with their biological father's family. Both families expressed a commitment to facilitate and nurture the twins' relationships

with relatives on both sides of the family, and the DSS caseworker explained she had no concerns regarding the suitability of either home. However, the family court identified specific reservations with placing the twins with Foster Parents, and it is evident that those concerns informed the ultimate placement decision.

Foster Parents contend the findings against them were unsupported by evidence and unrelated to the best interest of the twins. We respectfully disagree.

One of the family court's concerns involved Foster Father's (Van James) employment history. On this record, we cannot conclude the family court's findings lack evidentiary support. *Id.* at 389, 709 S.E.2d at 654 (explaining an appellant must demonstrate the challenged finding is against the preponderance of the evidence to warrant reversal).

Nor do we find the family court erred in considering this evidence as part of the best-interest analysis, particularly given the undisputed evidence that Foster Father served as the family's sole provider. *See Smith*, 423 S.C. at 90–94, 814 S.E.2d at 164–66 (recognizing concerns related to financial stability and employment history may properly factor into an adoptive placement determination).

The family court also expressed concerns regarding Foster Mother's (Lauren James) judgment and credibility. Those concerns likewise find support in the record.

Family court proceedings are necessarily fact-intensive, and credibility determinations frequently assume central importance. *See Lewis*, 392 S.C. at 390, 790 S.E.2d at 654 ("The highly fact-intensive nature of family court matters lends itself to a respect for the factual findings of our able and experienced family court judges who are in a superior position to assess the demeanor and credibility of witnesses. Indeed, life-altering credibility determinations often lie at the heart of family court factual findings."). Recognizing the family court's superior position to evaluate evidence and credibility, we see no basis to disturb the family court's findings. *See Wilcox*, 304 S.C. at 93, 403 S.E.2d at 144 ("Sitting as an appellate court, we are not as able to weigh the testimony and evidence as the trial [court] who saw and heard the witnesses," and "where the evidence presented in the record adequately supports the findings of the trial [court], due deference should be given to [the court's] judgment based on [its] superior position in weighing such evidence.").

Another central issue in this case was whether the twins had attached to Foster Parents. The family court heard from several experts and ultimately decided to find

attachment had not occurred. The expert testimony revealed consensus on two points: (1) time was critical in determining placement; and (2) prevailing research generally does not support, or approve of, assessing attachment before a child reaches approximately one year of age.

Foster Parents presented experts who opined the twins had formed attachments to them and that continued placement with Foster Parents would serve the twins' best interest. One of these experts (Laura Jean Beauvais) testified she believed attachment was the pivotal consideration in the best-interest analysis, though she conceded she was unaware of any research supporting the presence of attachment at such an early age and acknowledged she did not ordinarily evaluate infants in her practice. Another expert (Pam Stafford) similarly acknowledged an international consensus report concluding attachment relationships are typically not observable until late in a child's first year of life and that assessing attachment quality before that point is generally inadvisable. She further acknowledged it was possible that she mistook "comfort seeking behaviors" for attachment when assessing the twins.

Conversely, Uncle and Aunt's expert testified the relevant literature conclusively establishes attachment cannot reliably be assessed at the twins' age. She explained that she could definitively opine on the lack of attachment in this case because "the literature is clear about it." Like the other experts, she also stated she was unaware of any research supporting a contrary conclusion.

In evaluating the expert testimony, the family court emphasized the consensus reflected in professional literature about when attachment can be assessed. The family court also noted the anecdotal evidence supporting Foster Parents' bond with the twins was not materially different than the evidence offered to establish Uncle and Aunt's bond with the twins. Finally, the family court noted that its concerns with Foster Mother's credibility affected the weight given to certain expert testimony because those opinions relied, in part, on information provided by Foster Mother. On this record, and especially with the testimony regarding the limitations of assessing attachment with infants of this age, we are not persuaded the family court erred in its evaluation of the expert testimony. *See Lewis*, 392 S.C. at 389, 709 S.E.2d at 654 (emphasizing "de novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court").

The family court also mentioned practical considerations relevant to the best interest of the twins. Uncle and Aunt have already raised two children to adulthood and appear to be in a better position to accept the twins because their youngest biological child is twelve. Foster Parents, by contrast, already have multiple special needs

children under the age of six, which would be challenging for anyone.  Foster Parents also noted that they would have to renovate their home or move to accommodate bringing the twins into their home.  Additionally, the family court noted the twins' biological father had relinquished his parental rights only in favor of Uncle and Aunt and would oppose any adoption pursued by Foster Parents, thereby presenting an additional obstacle to permanency in the event Foster Parents were awarded placement.

Foster Parents argue the family court impermissibly relied on racial considerations in making its placement determination.  The record does not support this contention.  The family court expressly declined to make findings concerning either family's ability to nurture the twins' racial, cultural, or ethnic heritage.  DSS explained it slightly favored placement with Uncle and Aunt based upon the totality of the circumstances and specifically explained race was not considered in its recommendation.  Accordingly, we are unpersuaded that the family court relied on impermissible considerations or otherwise erred in its ruling.

There was a passing suggestion in the briefing and a more direct request during the oral argument that, if we affirmed placement with Uncle and Aunt, our judgment should include some visitation for Foster Parents and their family or that we should remand the case to the family court for that purpose.  The family court's ruling left room for visitation as long as it was in the twins' best interest and invited any aggrieved party who disagreed with DSS's assessment of what would be in the twins' best interest to file a motion.  We agree with this ruling and respectfully decline the request to disturb it.

For these reasons, we affirm the family court's order.

**AFFIRMED.**

**GEATHERS, HEWITT, and CURTIS, JJ., concur.**