**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Tyeisha Miller and Channing Gill, Sr., Defendants,

Of whom Tyeisha Miller is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2015-000975

_____

Appeal From Sumter County
Angela R. Taylor, Family Court Judge

_____

Unpublished Opinion No. 2016-UP-265
Submitted May 20, 2016 – Filed June 2, 2016

_____

**AFFIRMED**

_____

Erik Tison Norton, Tara C Sullivan, and David Lee Miles Brown, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia, for Appellant.

Scarlet Bell Moore, of Greenville, for Respondent.

Edgard R. Donnald, Jr., of Sumter, and Brenda L. Gorski, of the South Carolina Guardian Ad Litem Program, of Columbia, for the Guardian ad Litem.

**PER CURIAM:**  Tyeisha Miller (Mother) appeals the family court's order terminating her parental rights to her minor children SG, CG, and KM.  On appeal, Mother argues clear and convincing evidence does not support the statutory grounds for termination of parental rights (TPR) or show TPR is in the children's best interest.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.  The burden is upon the appellant to convince this court that the family court erred in its findings.  *Id*.

"Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing termination proceedings and termination is proper only when the evidence clearly and convincingly mandates such a result."  *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006).  The family court may order TPR upon finding a statutory ground for TPR is satisfied and also finding TPR is in the child's best interest.  S.C. Code Ann. § 63-7-2570 (Supp. 2015).  The grounds for TPR must be proved by clear and convincing evidence.  *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

We find clear and convincing evidence showed SG was harmed, and due to the severity or repetition of the abuse or neglect, it was not reasonably likely Mother's home could be made safe within twelve months.  *See* S.C. Code Ann. § 63-7-2570(1) (Supp. 2015) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed as defined in Section 63-7-20 [of the South Carolina Code (2010)], and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months.  In determining the likelihood that

the home can be made safe, the parent's previous abuse or neglect of the child or another child may be considered."). Mother's argument that DSS did not show she harmed SG is misplaced. The plain language of the statute did not require DSS to prove Mother inflicted the harm. Rather, the plain language of the statute required DSS to prove (1) a child was harmed and (2) due to the severity and repetition of the harm, Mother's home could not be made safe within a year. DSS presented overwhelming evidence through the testimony of Dr. Matthew Marcus and Dr. Olga Rosa that SG was severely harmed by another person and the injuries were not accidental. Thus, the record clearly and convincingly established SG was severely harmed.

DSS also presented clear and convincing evidence showing it was not reasonably likely Mother's home could be made safe within twelve months. DSS clearly and convincingly established—through Mother's statements to law enforcement and the medical testimony of Dr. Marcus and Dr. Rosa—that the harm was inflicted while SG was in Mother and Channing Gill, Sr.'s (Father's) care. Dr. Marcus opined the skull fractures depicted in the June 30 CT scan occurred "[w]ithin the last several days" before the CT scan, the rib fractures looked new at the time of the July 1, 2012 x-ray, and the brain injury and rib fractures occurred concurrently. Dr. Rosa opined SG's seizures began concurrently with the injury. Finally, Mother told Sergeant Irene Culick that when she and Father picked up SG from the aunt's house the prior day, her "ribs were not making that movement. And she wasn't seizing, at the time." Mother initially told Sergeant Culick she was home with Father and SG the entire morning and nothing occurred; Mother later changed her story and stated she was not at home that morning. Regardless of whether Mother was home when SG was abused, the evidence does not point to anyone other than Mother or Father who could have inflicted the abuse.

Additionally, the record established SG's injuries were noticeable. Detective Ricky Morse, who observed SG's injuries, testified SG was seizing and looked like she was being tazed, "her hands were drawn in, and gripped and shaky," and she had "some bruising about her head." Dr. Rosa testified that even if someone other than Mother or Father injured SG, Mother and Father would have seen an indication that SG was injured or in distress when she was returned to them. However, Dr. Rosa testified SG's clinical history indicated the seizures began around 9:00 a.m., and Mother and Father waited until 2:30 p.m. to take SG to the hospital. Due to the severity of SG's injuries, we find it was unreasonable to wait five hours to seek medical treatment.

Once SG was taken to the hospital, neither Mother nor Father offered any type of explanation for SG's severe injuries—injuries so severe SG had to be placed in a medically-induced coma due to constant seizures. Although Mother argues on appeal that Father inflicted the injuries, Mother did not offer any type of explanation to law enforcement or medical personnel when SG was admitted into the hospital. Based on the severity of SG's injuries, we find Mother's lack of an explanation was not credible, and the only inference to be drawn from it was that Mother was protecting herself or Father.

Further, DSS and the GAL presented evidence showing Mother continued a relationship with Father after SG was injured. Mother gave birth to Father's child in August 2014—twenty-five months after SG was injured. The GAL reported seeing Mother flirt with Father during a DSS meeting and a therapy session for SG. Although Father is currently incarcerated, his projected release date is October 16, 2018; thus, he will be released from prison while the children are still young. The Guardian ad Litem reported that Mother said "she would not want to keep her children from their father, because they are his children too." Assuming—as Mother now contends—that Father inflicted the harm, we find Mother's continued relationship with him showed it was unlikely her home could be made safe for the children. Thus, clear and convincing evidence supports this statutory ground.

Additionally, we find SG and CG were in foster care for fifteen of the most recent twenty-two months. *See* S.C. Code Ann. § 63-7-2570(8) (Supp. 2015) (providing a statutory ground for TPR is met when a "child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months"). SG and CG entered foster care on July 1, 2012, and remained in foster care at the time of the February 15, 2015 TPR hearing. Thus, they were in foster care for more than two years. We disagree with Mother's contention that this statutory ground should not apply to the facts of this case. *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) (providing a court applying this statutory ground "must find that severance is in the best interests of the child, and that the delay in reunification of the family unit is attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected"). Following the November 1, 2012 merits hearing, the family court held permanency planning hearings on April 11, 2013, October 10, 2013, and June 19, 2014; thus, this case was regularly reviewed by the family court. Additionally, Mother's assertion that she completed her treatment services within fifteen months is inaccurate. Although the April 2013 permanency planning order indicated Mother was complying with her treatment plan, the October 2013 permanency planning order stated Mother continued to struggle with

moderate major depression and had not received sufficient services to address her problems.  Thus, we find this case does not present a situation where reunification was delayed due to DSS's mistakes.

Finally, we find TPR is in the children's best interest.  *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) (providing the best interest of the child is the paramount consideration in a TPR case); S.C. Code Ann. § 63-7-2620 (2010) ("The interest[] of the child shall prevail if the child's interest and the parental rights conflict.").  SG has special needs due to harm inflicted by a third party.  Two experts testified the injuries were caused by a third party; Mother and Father were the only two parties who were allegedly home with SG the morning before she was taken to the hospital, and neither of them has been able or willing to offer an explanation for what happened.  We find Mother's unwillingness or inability to offer investigators and medical personnel insight into SG's injuries shows she is not capable of adequately protecting the children.  Because we find Mother's home cannot be made safe, and because it appears the children will achieve permanency through adoption if TPR is affirmed, we find TPR is in the children's best interest.

**AFFIRMED.**[1]

**SHORT and THOMAS, JJ., and CURETON, A.J., concur.**

---

[1] We decide this case without oral argument pursuant to Rule 215, SCACR.