**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Danielle Youngblood, David Hall, Lula Mae Hall, and
Wesley Hall, Defendants,

Of whom David Hall and Lula Mae Hall are
Respondents, and

Danielle Youngblood is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2016-002325

———————————

Appeal From Darlington County
Michael S. Holt, Family Court Judge

———————————

Unpublished Opinion No. 2017-UP-357
Submitted August 11, 2017 – Filed September 8, 2017

———————————

**REVERSED AND REMANDED**

———————————

Melvin Wayne Cockrell, III, and Sarah Crawford
Campbell, both of Cockrell Law Firm, P.C., of
Chesterfield, for Appellant.

Michael J. Anzelmo and Chadwick S. Devlin, both of
Nelson Mullins Riley & Scarborough, LLP, of Columbia;
and Cody Tarlton Mitchell, of Lucas Warr & White, of
Hartsville, for Respondent Lula Mae Hall.

Elizabeth Biggerstaff York, of Law Office of Elizabeth
York, of Darlington, for Respondent South Carolina
Department of Social Services.

Robbie Forrester Gardner, III, of Rob F. Gardner, III, PC,
of Hartsville, for the Guardian ad Litem.

---

**PER CURIAM:**  Danielle Youngblood (Mother) appeals a family court judicial review order that placed custody of her children with David and Lula Mae Hall (Grandparents) and allowed the Department of Social Services (DSS) to close its case after a ninety-day monitoring period.  On appeal, Mother argues the family court erred by using unsupported evidence to reach its decision.  Because we find no evidence in the record supports the family court's findings that Mother did not rectify her drug addiction, we reverse and remand.[1]

This removal action began after DSS received reports that Mother was smoking marijuana around the children.  The family court issued a removal order on July 11, 2016, adopting the parties' agreement.[2]  Pursuant to that agreement, the family court found Mother and Father physically neglected the children, and returning them to the home would place them at an unreasonable risk of harm.  The family court placed the children in Grandparents' temporary custody and ordered Mother and Father to complete a placement plan that included completing a drug and alcohol assessment and following all recommendations, and submitting to random drug screens and testing negative for six months.[3]  The family court ordered a judicial review hearing to be held on July 12, 2016.

Following the July judicial review hearing, the family court issued an order finding Mother and Father were complying with treatment, Mother was "waiting to go

---

[1] David Hall (Father) was also a party to this action; he has not appealed.
[2] The removal hearing was held April 26, 2016.
[3] All of the items set forth in the placement plan related to Mother's and Father's drug use.

in-patient for substance abuse treatment," and Mother tested negative for illegal drugs on June 27, 2016.  The family court denied the guardian ad litem's (the GAL's) "[m]otion for custody of the children to be granted to [Grandparents] and that this matter be closed."  The court maintained temporary custody of the children with Grandparents and scheduled a second judicial review hearing.

During the October 6, 2016 judicial review hearing, Kelly Galloway, a DSS family preservation caseworker, testified the children were removed based on Mother's marijuana use, and Mother and Father had complied with treatment services.  Specifically, Galloway testified Mother completed a twenty-eight day inpatient drug treatment program on August 19, 2016, completed all recommendations from her drug and alcohol assessment, received ongoing drug treatment "for any needs that may follow after inpatient treatment," and had complied with all recommendations from her counselor.  She stated all of Mother's drugs screens since completing treatment were negative.  According to Galloway, Mother was screened for drugs on September 1 and was negative; she submitted to a urine and hair follicle screen on September 19 and was "negative on both"; and she submitted to a random drug screen on October 17 and was negative.  Galloway stated Mother had not tested positive for drugs since before the July judicial review hearing.  Galloway did not have any concerns with returning the children to Mother and Father's home.  She stated they had stable housing and could financially provide for the children, and DSS was never concerned with the condition of their home.  Galloway testified both parents completed their treatment plans, and DSS requested reunification and to close its case.

On cross-examination, Galloway acknowledged the children "loved staying with" their grandparents.  She testified the children were doing well and had "always said they didn't want to go back home."  However, she explained that more recently, the children had stated they were willing to return home if their parents were no longer using drugs.  Galloway testified the children understood Mother and Father were "trying to do what they need to do."

Galloway testified the children did not like the neighborhood their parents lived in because "they didn't think was safe."  She explained there was "a big difference in" Mother and Father's home and Grandparents' home: Mother and Father's home was "a lot smaller"; the children had their own bedrooms at Grandparents' home whereas they shared a bedroom at Mother and Father's home; Grandparents lived in the country; and the children each had a horse at Grandparent's house.  Galloway also stated the children were concerned that Mother and Father would not allow

them to visit Grandparents if they returned home. She testified the children never told her they did not have food at Mother and Father's home.

Mary Perdue, the GAL, disagreed with DSS's plan for reunification. She testified, "The children have repeatedly from day one told me that they did not want to go home; that they wanted to stay with their grandparents." The GAL testified "the children have stated . . . there have been times when they [were] hungry at the parent's house." However, she acknowledged no one ever alleged to DSS that the children did not have adequate food, and she noticed meat "stacked from the bottom up to the top" in the freezer and food in the cabinets when she visited Mother and Father's home.

The GAL testified the children were concerned about Mother's drug use; they told her Mother sent them outside "when her friends [came] over, which [was] regularly." The GAL testified the home was in "a neighborhood where there is a lot of drug use," and the children were "scared to go out and walk the neighborhood because of the drugs." The GAL stated the children were also concerned "they [would] not be allowed to see [G]randparents" if they returned home. The GAL acknowledged Mother completed inpatient treatment but remained concerned about the children. She testified,

> [The daughter] has been very upset, crying a lot; just really concerned. She has stated that she will go home if she has to go home. But she does not believe that [M]other will stay off the drugs. She has stated to me that [Mother] has said that she does marijuana; she smokes it, and she will continue to smoke it.

On cross-examination, the GAL acknowledged she never observed visits between Mother and the children or spoke to Father. She acknowledged the children had lived with Grandparents since November 2015, and their concerns were based on actions that occurred prior to their removal. She also acknowledged Mother tested negative for drugs before she began inpatient treatment. According to the GAL report, Mother last tested positive for marijuana on March 19, 2015; and she tested negative for drugs on January 27, 2016, June 27, 2016, July 7, 2016, September 1, 2016, and September 19, 2016.[4] In her report, the GAL set forth the following reasons the children wished to remain with Grandparents:

---

[4] The July 7, 2016 test was positive of Oxazepam at an inconsistent level.

1. They are not hungry because their grandma cooks for them.
2. They are not worried about being left alone.
3. They are not in a home where someone may be drinking, doing drugs[,] or yelling at each other.
4. They do not believe that their parents will stay off drugs.
5. They state they do not trust their parents; they say one thing and do something else.
6. They are scared that their parents will not let them see their grandparents anymore.
7. They are scared of the repercussions from their parents when/if they do go home.

Following the GAL's testimony, the family court met with the children in chambers; the GAL and Galloway joined them.

The family court issued a final order finding Mother completed an inpatient substance abuse program, continued to follow up with treatment services, and tested negative for illegal drugs. Likewise, the family court found Father successfully completed the Nurturing Parenting program and tested negative for illegal drugs. However, the family court found returning the children to Mother and Father's home would place them at an unreasonable risk of harm. The family court determined, "After hearing all the testimony in this matter and careful consideration, the [c]ourt is not satisfied that [M]other has completely rectified her drug abuse problems." The family court placed legal and physical custody of the children with Grandparents, granted Mother and Father alternate weekend visitation, and provided DSS could close its case after a ninety-day monitoring period. This appeal followed.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court can order a child removed from a parent's custody only if

the court finds that the allegations of the [removal] petition are supported by a preponderance of evidence including a finding that the child is an abused or neglected child as defined in [s]ection 63-7-20 and that retention of the child in or return of the child to the home would place the child at unreasonable risk of harm affecting the child's life, physical health or safety, or mental well-being and the child cannot reasonably be protected from this harm without being removed.

S.C. Code Ann. § 63-7-1660(E) (2010). "'Preponderance of evidence' means evidence which, when fairly considered, is more convincing as to its truth than the evidence in opposition." S.C. Code Ann. § 63-7-20(21) (Supp. 2016).

"Child abuse or neglect" or "harm" occurs when the parent, guardian, or other person responsible for the child's welfare:

(a) inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . [;]

(b) commits or allows to be committed against the child a sexual offense . . . or engages in acts or omissions that present a substantial risk that a sexual offense . . . would be committed against the child;

(c) fails to supply the child with adequate food, clothing, shelter, or education . . . ;

(d) abandons the child;

(e) encourages, condones, or approves the commission of delinquent acts by the child . . . ; or

(f) has committed abuse or neglect as described in subsections (a) through (e) such that a child who subsequently becomes part of the person's household is at substantial risk of one of those forms of abuse or neglect.

S.C. Code Ann. § 63-7-20(6) (Supp. 2016).

> If the court determines at the permanency planning
> hearing that the child may be safely maintained in the
> home in that the parent has remedied the conditions that
> caused the removal and the return of the child to the
> child's parent would not cause an unreasonable risk of
> harm to the child's life, physical health, safety, or mental
> well-being, the court shall order the child returned to the
> child's parent.  The court may order a specified period of
> supervision and services not to exceed twelve months.
> When determining whether or not the child should be
> returned, and the court shall consider all evidence; if the
> removal of the children from the family was due to drug
> use by one or both parents, then a drug test must be
> administered to the parent or both parents, as appropriate,
> and the results must be considered with all other evidence
> in determining whether the child should be returned to
> the parents' care; and the supplemental report including
> whether the parent has substantially complied with the
> terms and conditions of the plan approved pursuant to
> [s]ection 63-7-1680.

S.C. Code Ann. § 63-7-1700(D) (Supp. 2016).

We find a preponderance of the evidence is against the family court's finding that
Mother did not rectify her drug addiction.  The undisputed evidence showed
Mother completed a twenty-eight day inpatient drug treatment program on August
19, and all of her drugs screens since then were negative.  Galloway testified
Mother completed all recommendations from her drug and alcohol assessment,
received ongoing drug treatment "for any needs that may follow after inpatient
treatment," and had complied with all recommendations from her counselor.  She
stated Mother tested negative for drugs on September 1, September 19, and
October 17, and she had not tested positive for drugs since before the July judicial
review hearing.  Galloway did not have any concerns with returning the children to
Mother and Father's home.

Although the GAL expressed the children's concerns that Mother would relapse,
she acknowledged their concerns were based on actions that occurred prior to their

removal.  She also acknowledged Mother tested negative for drugs before she began inpatient treatment, and Mother completed inpatient treatment.  According to the GAL report, Mother last tested positive for marijuana on March 19, 2015—which was more than eighteen months before the final hearing.  We find no evidence in the record supports the family court's finding that Mother had not rectified her drug addiction.

The family court did not make any additional findings that could support its finding that returning the children to the home would place them at an unreasonable risk of harm, as defined by section 63-7-20.  In the absence of the family court's finding that Mother did not rectify her drug addiction—which was not supported by any evidence—we do not see any other evidence that would support the finding that returning the children to the home would place them at an unreasonable risk of harm, as defined by section 63-7-20.  Thus, we reverse the family court's order.  However, because this case involves minor children and this court does not have a record of what has transpired since the October 20, 2016 judicial review hearing, we remand for a permanency planning hearing.  At that time, DSS and the GAL can update the family court on the current status of the children and the parties, including whether Mother and Father have maintained sobriety.

**REVERSED AND REMANDED.**[5]

**LOCKEMY, C.J., and HUFF and HILL, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.