**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Appellant,

v.

Kierra Renee Young-Gaines and Michael Sergio Wright,
Defendants,

Of whom Kierra Renee Young-Gaines is the Respondent.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2018-000579

———————

Appeal From Greenville County
Alex Kinlaw, Jr., Family Court Judge

———————

Unpublished Opinion No. 2019-UP-150
Heard March 13, 2019 – Filed April 25, 2019

———————

**REVERSED AND REMANDED**

———————

Andrew Troy Potter, of Anderson, for Appellant.

Jennifer Lynn Mook, of Law Office of Jennifer Mook, LLC, of Aiken, for Respondent.

Robert A. Clark, of Greenville, for the Guardian ad Litem.

———————

**PER CURIAM:** The Department of Social Services (DSS) appeals the family court's order denying the termination of parental rights (TPR) of Kierra Renee Young-Gaines (Mother) to her minor son (Child) and returning Child to Mother.[1] On appeal, DSS contends it established by clear and convincing evidence that (1) Child was harmed, and due to the severity or repetition of the abuse or neglect, it was not reasonably likely Mother's home could be made safe within twelve months; (2) Mother failed to remedy the conditions causing the removal; and (3) Child was in foster care fifteen of the most recent twenty-two months. DSS further contends TPR was in Child's best interest, and the family court erred in ordering Child be immediately returned to Mother. We reverse and remand.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414-15, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52. The burden is upon the appellant to convince this court the family court erred in its findings. *Id.* at 385, 709 S.E.2d at 652.

The family court may order TPR upon finding one or more of twelve statutory grounds is satisfied and TPR is in the best interest of the child. S.C. Code Ann. § 63-7-2570 (Supp. 2018). The grounds for TPR must be proven by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

First, clear and convincing evidence showed Child was harmed, and due to the severity or repetition of the harm, Mother's home was not reasonably likely to be made safe within twelve months. *See* § 63-7-2570(1) (stating a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed as defined in [s]ection 63-7-20[(6) of the South Carolina

---

[1] Although the family court did not order TPR of Mother, it found clear and convincing evidence supported TPR of Michael Sergio Wright (Father).

Code (Supp. 2018)], and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"). Child was harmed by Mother's neglect. *See* § 63-7-20(6)(a)(i) (stating "harm" occurs when the parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . .").  Initially, Child was harmed in September 2014 when he presented at the hospital with what was deemed a "non-accidental" eye injury that occurred while in Mother's care; Mother negotiated the physical abuse finding down to physical neglect, and the family court made a finding of physical neglect against Mother on December 10, 2014. The family court subsequently returned Child to Mother in August 2015 after she completed a placement plan; however, in April 2016, Child tested positive for methamphetamine, cocaine, and marijuana, and was placed into foster care again. Although Mother did not test positive for drugs herself, she was the custodial parent for Child, and her decisions placed him in proximity to drug abuse.  The family court accepted Mother's *Alford* plea to physical neglect of Child.  Thus, clear and convincing evidence showed Child suffered harm.  Moreover, due to the severity and repetition of the harm to Child, it was unlikely Mother's home was likely to be made safe within twelve months.  Here, Mother did not demonstrate she could make the kind of decisions that would provide a safe home for Child. After Child was placed in foster care in April 2016, Mother indicated she believed Child tested positive for drugs because he spent time with an uncle; despite this belief, Mother allowed this uncle to be present for at least one visitation with Child.  Further, Mother continued to be involved with Father despite his failure to progress in his placement plan, his continued marijuana use, and their history of domestic violence.  Although Mother testified she last saw Father one to two months prior to the TPR hearing, the guardian ad litem (the GAL) believed Mother and Father were still dating based on contact or conversations she witnessed between the two.  Specifically, the GAL stated that after Mother told her she was not dating Father anymore, "did[ not] know where he was," and "had[ not] talked to him," she watched Mother and Father drive off together after Mother visited Child.  The GAL recalled another instance in which she heard Mother tell someone on the phone "[y]ou need to get your stuff out of the house, I think the DSS worker is going to come make a home visit"; she explained Mother later acknowledged she had been speaking to Father.  The DSS caseworker also believed Mother and Father were still dating based on Mother's phone calls to Father during visits with Child.  Accordingly, clear and convincing evidence supports this ground.

Second, clear and convincing evidence showed Mother failed to remedy the conditions causing Child's removal.  *See* § 63-7-2570(2) (stating a statutory ground

for TPR is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent[,] and the parent has not remedied the conditions which caused the removal"). Child was initially removed from Mother on April 15, 2016, because he tested positive for methamphetamine, cocaine, and marijuana. On May 17, 2016, the family court ordered Mother to complete a placement plan; among other things, the placement plan required Mother to (1) set and keep all appointments for the parenting support group "Moms Matter"; (2) set and keep all appointments for in-home parenting classes; (3) provide a stable, clean, drug and alcohol-free living environment for Child; and (4) demonstrate the ability to financially support Child's basic needs. According to DSS, Mother engaged in three in-home parenting classes in 2016 but did not complete the program, which typically consisted of ten-to-twelve classes. Mother also did not participate in Moms Matter as ordered; she attended a few meetings in summer 2017, but did not resume the support group until three or four weeks before the TPR hearing. Although the family court ordered Mother's placement plan in May 2016, Mother did not start attending Moms Matter until summer 2017. Mother testified she was not able to attend Moms Matter meetings because of her work schedule. Accordingly, because Mother failed to complete the requirements of her placement plan, clear and convincing evidence shows Mother failed to remedy the conditions causing Child's removal.[2]

The family court's order does not contain findings to support its conclusion that Child's immediate return to Mother was in Child's best interest. *See* Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the [family] court's decision."). Moreover, although the family court found TPR of Father was in Child's best interest, the order failed to address the practical impact of this finding on Mother and Child based on the fact Mother was pregnant with Father's child at the time of the TPR hearing. Further, based on our de novo review, the record does not support the family court's finding that Child's return to Mother at the time of the TPR hearing was in Child's best interest. *See S.C. Dep't*

---

[2] We decline to apply the statutory ground that Child was in foster care fifteen of the last twenty-two months because DSS did not properly plead this ground. At the time DSS filed its complaint for TPR, Child had not been in foster care for fifteen months. *See* § 63-7-2570(8) (providing a statutory ground for TPR is met when "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months."). Moreover, DSS did not amend the complaint once Child had been in foster care for fifteen months.

*of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a termination of parental rights case, the best interests of the children are the paramount consideration."). First, neither DSS nor the GAL had completed a home study. Mother initially did not inform DSS or the GAL of her address change, and the GAL explained Mother "was very evasive" about the home study. Second, Mother failed to complete her placement plan—specifically the in-home parenting classes and support group sessions that were directly related to addressing the circumstances surrounding Child's removal. Mother maintained contact with Father who had continually tested positive for marijuana and did not participate in his placement plan. Third, she took no interest in Child's therapy needs and did not appear to improve her understanding of child developmental milestones. Child was involved in occupational/physical therapy and speech therapy while in foster care, and although Mother knew Child attended speech therapy, she believed Child's other therapy was for "a temper problem." According to the DSS case worker, Mother had struggled to care for Child properly since birth; Child failed to thrive when he was born, and although Mother was instructed to feed him multiple times during the night, she did not. Additionally, the GAL expressed concern Child would fall behind developmentally because Mother did not understand the developmental milestones. According to the GAL, Mother interacted with Child "very little" during visits, and recalled Child was "pretty much on his own"; the DSS caseworker testified similarly. Both the GAL and the DSS caseworker believed TPR was in Child's best interest. Thus, we find that as of the time of the TPR hearing, TPR was in Child's best interest.

However, although the record and family court's order do not support Child's swift return to Mother, Child has now been in Mother's custody for over sixteen months. *See Georgetown Cty. Dep't of Soc. Servs. v. Phipps*, 278 S.C. 64, 65, 292 S.E.2d 184, 185 (1982) (expressing concern "that the best interests of the children [could not] be determined because considerable time ha[d] elapsed since custody was granted and the record ha[d] become stale"). At oral argument, the attorney for DSS acknowledged DSS had continued to monitor Child, did not believe Child was in imminent risk of harm, and had not seen any reason to further involve the family court. Thus, although we find TPR was in Child's best interest at the time of the TPR hearing, under the specific facts of this case and based on the time Child has spent in Mother's custody, we cannot determine whether TPR remains in Child's best interest.

Accordingly, we reverse the family court's denial of TPR and remand to the family court to determine whether TPR is in Child's best interest.[3]  The family court shall hold this hearing as expeditiously as possible.  At a minimum, a home evaluation of Mother's residence shall be provided to the family court, and the GAL shall present a new report.  The court may, inter alia, change custody, modify visitation, order Child to be drug tested, order DSS to continue monitoring Mother, address Father's continued presence in Child's life, approve a treatment plan offering additional services to Mother, or order any other relief it deems just and proper.

**REVERSED AND REMANDED.**

**LOCKEMY, C.J., and WILLIAMS and GEATHERS, JJ., concur.**

---

[3] If the family court finds TPR is not in Child's best interest, it shall issue a permanency planning order determining whether Child may be safely maintained in Mother's home.