**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

David Directo, Appellant,

v.

South Carolina Department of Social Services,
Respondent.

In the interest of minors under the age of eighteen.

Appellate Case No. 2018-000974

———————

Appeal From Spartanburg County
Phillip K. Sinclair, Family Court Judge

———————

Unpublished Opinion No. 2019-UP-314
Submitted August 7, 2019 – Filed August 29, 2019

———————

**AFFIRMED**

———————

Melinda Inman Butler, of The Butler Law Firm, of
Union, for Appellant.

Amanda B. Stiles, of Greenville, for Respondent.

Nima Fiuzat, of Clemson, as the Guardian ad Litem.

———————

**PER CURIAM:** David Directo (Grandfather) appeals the family court's denial of his petition to adopt his two minor grandchildren (the children). On appeal, Grandfather contends the family court erred by (1) failing to grant his petition because only the Department of Social Services (DSS) contested the case and (2) finding the adoption by Grandfather was not in the children's best interest. We affirm.

On appeal from a matter in the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's factual findings de novo, we are not required to ignore the fact that the family court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 652. Further, "de novo review neither relieves an appellant of demonstrating error nor requires us to ignore the findings of the family court." *Id.* at 389, 709 S.E.2d at 654.

The family court properly found Grandfather was not a fit and proper person and able to care for the children and provide for their welfare. *See* S.C. Code Ann. § 63-9-750(B)(5) (2010) ("[T]he court shall issue an order granting the adoption if it finds that . . . the petitioner is a fit and proper person and able to care for the child and to provide for the child's welfare, and the petitioner desires to establish the relationship of parent and child with the adoptee . . . .").

Grandfather testified he was sixty-two years old, in good health, and did not drink, smoke, or use drugs. He stated "[the children's] best interest was always [his] concern," and he moved from California to South Carolina "for the sole reason to obtain custody of the[] children." Grandfather explained he regularly spoke to the children on the phone until 2015, helped support them financially prior to their placement in foster care, and attended all of the DSS scheduled visitations. Grandfather testified he had a two-bedroom apartment with twin beds for the children.

We acknowledge Grandfather's efforts in moving from California to South Carolina to seek custody of the children. We are concerned, however, with Grandfather's commitment to allowing Mother and Father to have a relationship with the children.[1] Although Grandfather stated he would comply with a court

---

[1] At the time of the adoption hearing, Father was serving a seventeen-year sentence for assault and battery of a high and aggravated nature, which involved Father

order prohibiting contact between the children and Mother and Father, DSS presented evidence in contravention to Grandfather's testimony. Tabitha Scheffler, a certified investigator with DSS, recalled Grandfather stated it was very important to him for the children to have contact with Mother and Father. Sandra Kay Kesler, the Guardian ad Litem (GAL) appointed in the DSS removal case, testified Grandfather indicated that as soon as Father was released from prison, he would "let him have the [children] and . . . [go] on a long vacation," and he would allow Mother to visit "any time she wanted to." Kesler believed Grandfather's petition to adopt was a "back door avenue" for Mother and Father to get the children back. Additionally, Alex Guempel, the DSS caseworker, testified that when Grandfather was asked "just last week" about reuniting the children with Mother and Father, he stated "he's not their mother, he's not their father, and how could he keep the [children] away from that."

Additionally, we are concerned about Grandfather's lack of awareness of the children's needs. Although Grandfather appeared to recognize the children's need for therapy at the final hearing, Kesler, Guempel, and Rachel Clyborne, the DSS adoptions supervisor for the children's case, expressed concern that over the previous three and a half years, Grandfather struggled to believe the children had experienced trauma, lacked understanding of the trauma they had faced, and failed to "tak[e] any steps to actively change" his lack of knowledge. Scheffler's biggest concern with Grandfather adopting the children was that his "[familial] connection to [the children] . . . seemed to blind him from the trauma that the children had experienced and what might be in their well-being in the future as far as contact." We are also concerned that Grandfather did not present a comprehensive plan about how he would handle child care while he was working, a significant issue.

Finally, we are concerned with Grandfather's prior parenting history. Grandfather acknowledged his two biological sons and a stepson were either in prison or had recently been released from prison. Although prior parenting history—standing alone—would not make Grandfather unfit to adopt, it is a factor our courts consider. *See S.C. Dep't of Soc. Servs. v. Smith*, 423 S.C. 60, 94, 814 S.E.2d 148,

---

shooting another individual; the oldest child witnessed this shooting. Guempel testified Mother admitted to using methamphetamine while pregnant with the youngest child in 2011, and the court granted custody of the children to a relative at that time. When the relative died in 2014, the children were found in Mother's custody in violation of a court order and the youngest child tested positive for amphetamines and methamphetamines. Mother and Father subsequently relinquished their parental rights.

166 (2018) (considering the grandmother's prior parenting history in determining her suitability as an adoptive parent).  For all of the foregoing reasons, Grandfather was not fit to adopt the children.

Further, adoption by Grandfather was not in the children's best interest.  *See id.* at 93, 814 S.E.2d at 165 ("In an adoption proceeding, the best interest of the child is the paramount consideration.").  In the October 8, 2014 merits hearing order, the family court noted Grandfather had expressed an interest in adopting the children and ordered DSS to make a referral for a home study through the Interstate Compact for the Placement of Children (ICPC) once Grandfather secured independent housing;[2] however, the initial home study was not complete until December 2016.  Although Grandfather moved to South Carolina in October 2015 in an effort to streamline the adoption process, he did not submit an intake form through DSS to adopt the children until March 2016, and he did not apply to adopt them until April 27, 2016.  Clyborne believed that some of the children's behavioral issues stemmed from "languishing in foster care for so long" because the children could not be placed in an adoptive home while Grandfather's home study was pending.[3]

Moreover, both Guempel and Kesler's testimony demonstrated concern about the strength and quality of Grandfather's relationship with the children.  Although the GAL appointed for the adoption case, Nima Fiuzat, believed Grandfather would be a suitable adoptive placement, Kesler, who had spent significantly more time with the children, explained she initially advocated for the children to be placed with Grandfather but no longer recommended adoption by Grandfather.

---

[2] At that time, Grandfather lived in California.

[3] As to Grandfather's argument that the family court erred by considering his failure to comply with the home study because it was not a requirement for a relative adoption and he made "diligent efforts to comply," section 63-9-1110 of the South Carolina Code (Supp. 2018) provides that when a person is adopting "a child to whom he is related by blood or marriage," "no investigation or report required under the provisions of [s]ection 63-9-520 is required *unless otherwise directed by the court*."  (emphasis added).  Here, the family court directed DSS to make a referral for an ICPC home study once Grandfather secured independent housing in California; when Grandfather moved to South Carolina without completing the California home study, DSS began a home study.  Accordingly, it was not error for the family court to consider Grandfather's actions in relation to the completion of his adoption home study.

Finally, the record shows the children are in a pre-adoptive home and are doing well. Following the denial of Grandfather's home study, the children were placed in their pre-adoptive foster care home in June 2017. Although the children's foster parents had not filed a petition to adopt the children at the time of Grandfather's final adoption hearing, Guempel and Kesler indicated the foster parents had completed all of the necessary steps to adopt and were waiting for Grandfather's action to be resolved before filing their own adoption action. Clyborne testified the reports of the children in their new foster home were "very favorable," and "[a] lot of the behavioral issues [the children] were having before ha[d] subsided." Kesler testified the children were doing "very well" in their current foster home and in school, and they had "a very close bond" with the foster parents, who were "totally involved with the different activities [the children did]." Guempel also believed the children were "doing very well" in their current foster home, had a "fairly strong bond" with their foster care parents, liked their pre-adoptive home, and felt safe.

Finally, although the biological relationship between Grandfather and the children is relevant to this court's consideration, this factor is not determinative. *See Dunn v. Dunn*, 298 S.C. 365, 367-68, 380 S.E.2d 836, 838 (1989) (recognizing "[t]he grandparent-status . . . is but one factor used in determining the child's best interest" in an adoption). We acknowledge and admire Grandfather's strong sense of family, his love for the children, and the efforts he made to adopt the children and preserve his family unit. However, after thoroughly considering the evidence in the record, we conclude adoption by Grandfather was not in the children's best interest. *See* § 63-9-750(B)(6) (2010) ("[T]he court shall issue an order granting the adoption if it finds . . . the best interests of the adoptee are served by the adoption . . . ."); S.C. Code Ann. § 63-9-20 (2010) ("[W]hen the interests of a child and an adult are in conflict, the conflict must be resolved in favor of the child.").

**AFFIRMED.**[4]

**WILLIAMS, GEATHERS, and HILL, JJ., concur.**

---

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.