**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Angelina Landaverde and James Finkle, Defendants,

Of whom James Finkle is the Appellant.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2019-000512

———————————

Appeal From Dillon County
Michael S. Holt, Family Court Judge

———————————

Unpublished Opinion No. 2020-UP-184
Submitted March 26, 2020 – Filed June 8, 2020

———————————

**AFFIRMED**

———————————

Nancy Carol Fennell, of Irmo, for Appellant.

Scarlet Bell Moore, of Greenville, for Respondent.

Tonya Perkinson Watkins, of Conway, for the Guardian
ad Litem.

———————————

**GEATHERS, J.:** James Finkle (Father) appeals an order terminating his parental rights to his son (Child). On appeal, Father argues the family court erred in finding clear and convincing evidence showed his home could not be made safe within twelve months due to severe or repetitious harm. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2019). The grounds for TPR must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

The family court properly found clear and convincing evidence showed Child was harmed, and due to the severity or repetition of the abuse or neglect, it was not reasonably likely Father's home could be made safe within twelve months. *See* § 63-7-2570(1) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed . . . , and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"). Child was severely harmed by Angelina Landaverde's drug use during her pregnancy with Child, and Father contributed to this harm by providing Landaverde drugs in exchange for sex. *See* S.C. Code Ann. § 63-7-20(6)(a)(i) (Supp. 2019) ("'Child abuse' or 'neglect' or 'harm' occurs when the parent . . . engages in acts or omissions which present a substantial risk of physical or mental injury to the child . . . ."). Child was also harmed by Father's failure to consent to necessary medical treatment, which delayed a required medical procedure. *See* § 63-7-20(6)(a)(iii) (providing harm occurs when a parent "fails to supply the child with adequate food, clothing, shelter, or education . . . , supervision appropriate to the child's age and development, or health care though financially able to do so or offered financial or other reasonable means to do so and the failure to do so has caused or presents a substantial risk of causing physical or mental injury").

Further, it is not reasonably likely Father's home can be made safe within twelve months. Robert Thompson, a caseworker for the Department of Social Services (DSS), testified about the deplorable and unsafe condition of Father's home during his initial visit in July 2018. He testified a bedroom closet opened to the kitchen and only "had a small cutoff partition separating it from the kitchen," which created a fire hazard. Thomson explained, "[P]art of his [bedroom] closet connected to the kitchen. They had two big ply boards that were loose. So I [stepped] on them to make sure . . . no one[] couldn't [sic] fall in[,] and I . . . moved two boards and . . . could see the [ground under] the house." He stated the floor had two weak spots that felt like they would fall through if someone jumped on them. Additionally, Thompson stated it "look[ed] like something was taken out of the ceiling." He explained the ceiling had a hole "[w]here the joist[s] were, like a partition was moved." Thompson testified the home did not have light fixtures; Father had two or three removable lights on extension cords hanging in different areas. He also stated the kitchen "sink was separated from the wall[,] and [he] could see the boards [that were] suppose[d] to have insulation[,] but [there were] gaping holes." Finally, Thompson stated the house smelled like dog urine and dog feces.

Thompson testified Father's home did not improve between his initial visit in July 2018 and his second visit on January 29, 2019—a period of six months. For example, a furnace was removed between the first and second visit, and Father "had it sticking out where the pipe would have to go to it." Thompson turned on a faucet during the second visit but nothing came out; Father's live-in girlfriend told him "she had to go outside to turn on the pump for water," but she did not show him that it worked. Child's guardian ad litem also visited the home in January 2019 and agreed it was deplorable. Although Thompson acknowledged DSS never provided Father written notification of the changes he needed to make, he discussed with Father the issues with his home and informed him the home had to be clean and safe before Child could live there. Thompson agreed most of the issues with Father's home could be corrected; however, he testified Father did not make any substantive improvements in the six months between his first and second visit. Based on the foregoing, it is not reasonably likely Father's home can be made safe within twelve months.

In addition to the deplorable condition of Father's home, we are concerned about allegations that Father pulled a gun on Landaverde twice. Although Father denied these allegations, he asserted Landaverde pulled a knife on him. This history of domestic violence suggests Father's home is not safe for Child. Further, although Father never tested positive for drugs, we are concerned about evidence indicating

he provided drugs to Landaverde.  Finally, although Father voluntarily submitted to a psychological evaluation, he did not comply with the recommended mental health services.  These factors further support the family court's finding that due to the severity or repetition of the abuse or neglect, it was not reasonably likely Father's home could be made safe in twelve months.  Although we greatly respect the sentiments expressed by our dissenting colleague, we nevertheless believe this ground is met based on the legislative mandate to liberally construe the TPR statutes, the evidence showing Child was harmed, and the evidence showing Father contributed to that harm.  *See* S.C. Code Ann. § 63-7-2620 (2010) (providing TPR statutes "must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship").

Finally, viewed from Child's perspective, TPR is in his best interest.[1]  *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); *S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."); § 63-7-2620 ("The interests of the child shall prevail if the child's interest and the parental rights conflict.").  As discussed previously, due to the deplorable conditions of Father's home, it is not likely he can provide a safe and suitable home for Child in the foreseeable future.  Additionally, at the time of the TPR hearing, Father was out of town most of the week working as a truck driver.  Although he had a live-in girlfriend who may have been available to care for Child while he was out of town, we question the long-term stability of this arrangement.  Finally, Child is in a preadoptive home where he had been placed since birth, and he is bonded with his preadoptive family.  Based on the foregoing, TPR is in his best interest.

**AFFIRMED.**[2]

**HEWITT, J., concurs.**

---

[1] Although Father does not raise this issue on appeal, we address it because it concerns the rights of a minor child.  *See Ex parte Roper*, 254 S.C. 558, 563, 176 S.E.2d 175, 177 (1970) ("[W]here the rights and best interests of a minor child are concerned, the court may appropriately raise, ex mero motu, issues not raised by the parties.").

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.

**LOCKEMY, C.J., dissenting:** I respectfully dissent. After more than a decade of reviewing the records in family court cases, I have a deep appreciation for the challenging and important work of our family courts. Our family court judges face a tremendously difficult task when deciding whether to sever the relationship of a parent and child. Appellate consideration of these decisions affords an opportunity for a review without any of the normal constraints present at the trial level. The outstanding performance of our family court bench as well as its efforts to ensure justice are demonstrated in the records we review. In this case, however, I have come to the conclusion that the evidence does not support the termination of Father's parental rights to Child.

The family court may not order TPR unless one or more of the grounds set forth in section 63-7-2570 is proved by clear and convincing evidence and TPR is in the best interest of the child. *See* § 63-7-2570 (setting forth the grounds for TPR); *Parker*, 336 S.C. at 254, 519 S.E.2d at 354 (stating the grounds for TPR must be proved by clear and convincing evidence). As the majority explained, section 63-7-2570(1) provides a statutory ground for TPR is met when "[t]he child or another child *while residing in the parent's domicile* has been harmed as defined in [s]ection 63-7-20, and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months." (emphasis added). I do not believe clear and convincing evidence supports this ground. Here, there was no evidence Mother and Father ever lived together, no evidence Child lived with Father, and no evidence Child or any other child was harmed while in Father's care. In fact, DSS was unaware who Child's father was when Father first appeared at the merits hearing following Child's removal from Mother. Further, because Child was removed at birth, there is no indication Father had even met Child until he voluntarily appeared in this action seeking a relationship with Child. Once Father's paternity was established, he began paying child support and visiting with Child. I acknowledge DSS had valid concerns about the condition of Father's home; however, there is no indication Father was given an opportunity to address these concerns. Rather, the caseworker testified DSS never provided Father with written notification of what he needed to do to improve his home. Further, DSS never made any findings of abuse or neglect against Father or ordered him to complete a placement plan. I recognize DSS was not required to provide written notification to Father of behaviors he must correct before he could regain custody; however, Father was employed, and the record does not establish by clear and convincing evidence that it was not reasonably likely his home could be made safe within twelve months. Based on the foregoing, I do not believe clear and convincing evidence supports this statutory ground for TPR.