**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Melanie Maddox, Appellant,

v.

Richard Carroll and Charity Carroll, Respondents.

Appellate Case No. 2019-000287

Appeal From Horry County
Jan B. Bromell Holmes, Family Court Judge

Unpublished Opinion No. 2020-UP-257
Heard August 25, 2020 – Filed August 27, 2020

**AFFIRMED**

Matthew M. Billingsley, of South Carolina Legal Services, of North Charleston, and Bronte Marie Anelli, of South Carolina Legal Services, of Conway, for Appellant.

Julaan Derrick, of Julaan Derrick, Attorney at Law; George M. Hearn, Jr. and Kathleen Wrenn Hearn, both of Hearn & Hearn, PA; and Johnny Gardner, of Gardner Bouchette, LLC; all of Conway, for Respondents.

Heather Michelle Cannon, of Heather M. Cannon, LLC, of Conway, as the Guardian ad Litem.

**PER CURIAM:**  Melanie Maddox (Mother) appeals an order terminating her parental rights to her son (Child).  On appeal, Mother argues the family court erred in finding (1) she willfully failed to visit Child and (2) termination of parental rights (TPR) was in Child's best interest.  We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo.  *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011).  Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony.  *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest.  S.C. Code Ann. § 63-7-2570 (Supp. 2019).  The grounds for TPR must be proved by clear and convincing evidence.  *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

The family court properly found clear and convincing evidence showed Mother willfully failed to visit Child.  *See* S.C. Code Ann. § 63-7-2570(3) (Supp. 2019) (providing a statutory ground for TPR is met when "[t]he child has lived outside the home of either parent for a period of six months, and during that time the parent has willfully failed to visit the child . . . .  [B]ut it must be shown that the parent was not prevented from visiting . . . by court order.").  A February 2015 family court order granted Richard Mace Carroll and Charity Young Carroll (collectively, Respondents) full custody of Child.  The order did not grant Mother visitation; however, it provided she could seek visitation in a new action after she had (1) submitted to a ten-panel hair follicle test, (2) participated in a psychological evaluation, and (3) sent Respondents the results of each within ten days of receiving the results herself.  We find the 2015 order did not prevent visitation; rather, it provided Mother with the mechanism to achieve visitation.  *See In re M.*, 312 S.C. 248, 250, 439 S.E.2d 857, 859 (Ct. App. 1993) (holding an order specifically outlining the mechanism through which visitation may resume did not equate to an order preventing visitation for the purposes of section 63-7-2570(3)).  We acknowledge the father in *In re M.* is described as "defiant[ly] refus[ing] to meet the reasonable conditions placed on his right to visitation," whereas here, Mother took some steps to adhere the 2015 order.  However, Mother did not assert she was financially unable to file a new action seeking visitation, and she failed to

complete the other steps outlined in the order to achieve visitation. Therefore, Mother was not prevented from visitation by the 2015 order and was provided with a mechanism to achieve visitation, which she did not utilize.[1]

Mother failed to submit any drug screen results to Respondents until she initiated this action on February 28, 2017. Further, Mother did not complete the required psychological evaluation until 2018.[2] Thus, Mother willfully failed to complete the steps the family court outlined for her to obtain visitation for more than two years following the filing of the 2015 order.[3] Based on the foregoing, clear and convincing evidence showed Mother willfully failed to visit Child.

Viewing the evidence from Child's perspective, as we must, we hold TPR is in his best interest. *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) ("In a [TPR] case, the best interests of the children are the paramount consideration."); *S.C. Dep't of Soc. Servs. v. Sarah W*., 402 S.C. 324, 343, 741 S.E.2d 739, 749-50 (2013) ("Appellate courts must consider the child's perspective, and not the parent's, as the primary concern when determining whether TPR is appropriate."). At the time of the TPR hearing in October 2018,

---

[1] As to Mother's argument her failure to visit was not willful because Respondents prevented her from having contact with Child, the final order required her to file for visitation before having contact with Child. Specifically, the 2015 order outlined how visitation could be sought *after* Mother completed her drug screen and psychological evaluation. Further, Mother contends her consistent communication with Respondents supports her intent to visit Child. To the extent Mother asserts this court should consider text messages she sent to Respondents a form of visitation, Mother only submitted proof she checked on Child, asked to visit Child, or desired her love be conveyed to Child during approximately nine of the twenty-six months Child resided with Respondents prior to her filing of a visitation action.

[2] To the extent Mother contends her failure to visit was not willful because she did not have the money to readily pay for the drug screens and psychological evaluations, Mother provided no evidence regarding either the cost of these tests or her income and expenditures before 2017.

[3] Mother contends her consistent communication with Respondents supports her intent to visit Child. To the extent Mother asserts this court should consider text messages she sent to Respondents a form of visitation, Mother only submitted proof she checked on Child, asked to visit Child, or desired her love be conveyed to Child during approximately nine of the twenty-six months Child resided with Respondents prior to her filing of a visitation action.

Child had not had contact with Mother in over four years. As discussed above, this delay was attributable to Mother's failure to comply with the 2015 order. Furthermore, although Child expressed to the guardian ad litem (the GAL) "he would not mind seeing [Mother] one more time," Child "made it very clear that he did not want to go anywhere with [Mother] and that he wanted to stay where he was." Moreover, according to Dr. Cheryl Ann Fortner-Wood,[4] although Child may have expressed an interest in seeing Mother, such interest did not necessarily mean reinstatement of visitation was in his best interest. Additionally, Dr. Fortner-Wood testified she was "convinced that Child ha[d] a secure attachment relationship with [Respondents]," Child and Respondents were bonded, and it would be in Child's best interest to be adopted by Respondents.[5] Further, Robert B. Carter, Child's therapist, testified Child indicated he did not want to return to Mother's home. Additional testimony from the GAL, Respondents, and Respondents' witnesses showed Child was doing well in Respondents' home, and both Respondents and Child wished for adoption to occur. Due to Child's need for permanency and stability, we hold TPR is in his best interest.

**AFFIRMED.**

**WILLIAMS, KONDUROS, and HILL, JJ., concur.**

---

[4] The family court qualified Dr. Fortner-Wood as an expert in the area of child development and attachment.

[5] Mother contends reliance on Dr. Fortner-Wood's testimony is misplaced because Dr. Fortner-Wood's opinion was based on information she received from Respondents. However, Dr. Fortner-Wood testified she spent time observing Child with Respondents and looking for "the presence and the absence of things that would indicate a secure [or insecure] attachment relationship" between Child and Respondents. Moreover, Dr. Fortner-Wood did not state her opinion was based on information Respondents relayed to her.