**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Sierra Williams, Christopher Gore, James Weiver, Xavier Murphy, Montarious Wilmore, Cortezio Douglas, Leslie Gore, Gwendolyn Perkins, Michael Mackins, Romea Smith, Vivian Perkins, Brandy Scherer, Defendants,

Of whom Sierra Williams is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2019-002019

---

Appeal From York County
James F. Fraley, Jr., Family Court Judge

---

Unpublished Opinion No. 2020-UP-294
Submitted October 19, 2020 – Filed October 27, 2020

---

**REVERSED AND REMANDED**

---

Jennifer Lynn Mook, of Law Office of Jennifer Mook, LLC, of Aiken, for Appellant.

Scarlet Bell Moore, of Greenville, for Respondent.

Rebecca T. McNerney, of Waxhaw, North Carolina, for the Guardian ad Litem.

---

**PER CURIAM:** Sierra Williams (Mother) appeals the family court's judicial review order granting legal and physical custody of her five children to relatives and allowing the Department of Social Services (DSS) to close her case and forgo providing additional services. Because we find an extension of Mother's placement plan was warranted under the facts of this case, we reverse and remand.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

Initially, although the family court framed its order as a status review order, we find it is more accurately characterized as a permanency planning order because it closed DSS's case and placed the children in the custody of relatives. *See* S.C. Code Ann. § 63-7-1700(C) (Supp. 2019) ("At the permanency planning hearing, the court shall approve a plan for achieving permanence for the child.").

We find the family court properly found Mother's home was not safe for reunification at the time of the hearing. *See* S.C. Code Ann. § 63-7-1700(D) (Supp. 2019) ("If the court determines at the permanency planning hearing that the child may be safely maintained in the home in that the parent has remedied the conditions that caused the removal and the return of the child to the child's parent would not cause an unreasonable risk of harm to the child's life, physical health, safety, or mental well-being, the court shall order the child returned to the child's parent."). Mother tested positive for marijuana approximately six months before the hearing, after she completed a court-ordered drug and alcohol assessment. Further, Mother failed to follow a recommendation made in her psychological examination that she attend Narcotics Anonymous meetings. Finally, a relative caregiver testified Mother sent her derogatory text messages, and the DSS case worker testified Mother sent her threatening emails. Accordingly, we find the family court did not err in finding Mother's home was not safe for reunification.

However, under the facts here and based on the testimony of Mother's therapist, we find the family court erred in not ordering an extension of Mother's placement plan. *See* S.C. Code Ann. § 63-7-1700(F) (Supp. 2019) ("If the court determines that the criteria in subsection (D) are not met but that the child may be returned to the parent within a specified reasonable time not to exceed eighteen months after the child was placed in foster care, the court may order an extension of the [placement] plan . . . ."); *id.* ("An extension may be granted pursuant to this section only if the court finds: (1) that the parent has demonstrated due diligence and a commitment to correcting the conditions warranting the removal so that the child could return home in a timely fashion; (2) that there are specific reasons to believe that the conditions warranting the removal will be remedied by the end of the extension; (3) that the return of the child to the child's parent would not cause an unreasonable risk of harm to the child's life, physical health, safety, or mental well-being; (4) that, at the time of the hearing, initiation of termination of parental rights is not in the best interest of the child; and (5) that the best interests of the child will be served by the extended or modified plan.").

In the fourteen months after the children were removed from the home, Mother completed a drug and alcohol assessment, maintained stable housing and sufficient income, completed parenting classes, attended therapy, and submitted to random drug screenings. She underwent two negative drug screens following her one positive screen. Additionally, DSS acknowledged it caused a six-month delay in arranging Mother's court-ordered psychological evaluation. Beginning in March 2019, Mother exercised unsupervised visitation with the children every Saturday from 10:00 a.m. to 6:00 p.m. Further, Mother's therapist and the guardian ad litem (the GAL) both testified they observed positive behavioral changes in Mother. Pertinently, Mother's therapist testified Mother attended therapy sessions on a weekly basis after receiving the recommendation based on her psychological evaluation, was more compliant and less impulsive, and showed improved conflict-resolution skills. The GAL and the DSS case worker also testified the children loved Mother and wished to return to her home. Because Mother completed a substantial portion of her placement plan and the children expressed their desire to return home to Mother, we find it is in the children's best interest to allow Mother additional time to complete her placement plan and make her home safe for reunification.

Based on the foregoing, we reverse and remand for a permanency planning hearing pursuant to section 63-7-1700, which will allow the parties and the GAL to update the family court on what has occurred since the prior hearing. We make no finding about whether reunification with Mother is in the best interest of the children. We

urge the family court to conduct a hearing as expeditiously as possible and to consider a new GAL report and an updated home evaluation of Mother's residence. If necessary, the family court may, *inter alia*, change custody, modify visitation, and approve a placement plan offering additional services to Mother.[1]

**REVERSED AND REMANDED.**[2]

**HUFF, WILLIAMS, and GEATHERS, JJ., concur.**

---

[1] Because we find the case closure issue is dispositive, we decline to consider Mother's argument that the family court unconstitutionally lowered the standard for closing the case without reunification. *See* Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (noting an appellate court need not address remaining issues when the prior issue is dispositive).

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.