**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

South Carolina Department of Social Services,
Respondent,

v.

Trisha Christina Sweatt and Anthony Michael Henle,
Defendants,

v.

Ralph and Kelly George, Intervenor/Respondent,

Of whom Anthony Michael Henle is the Appellant

and

Trisha Christina Sweatt is a Respondent.

In the interest of a minor under the age of eighteen.

Appellate Case No. 2020-000908

Appeal From York County
Jessica Ann Salvini, Family Court Judge

Unpublished Opinion No. 2021-UP-186
Submitted April 23, 2021 – Filed May 24, 2021

**AFFIRMED**

Jennifer Lynn Mook, of Law Office of Jennifer Mook, LLC, of Aiken, for Appellant.

James Fletcher Thompson, of James Fletcher Thompson, LLC, of Spartanburg, for Respondents Kelly George and Ralph George.

Nathan James Sheldon, of The Law Office of Nathan J. Sheldon, LLC, of Rock Hill, for Respondent Trisha Christina Sweatt.

Christopher Craig Jackson, of Chris Jackson Law Firm LLC, of Mauldin, for Respondent South Carolina Department of Social Services.

Rebecca T. McNerney, of Waxhaw, North Carolina, for the Guardian ad Litem.

**PER CURIAM:** Anthony Michael Henle (Father) appeals an order terminating his parental rights to his minor child (Child). On appeal, Father argues the family court erred in finding (1) Father's home could not be made safe in twelve months due to severe or repetitious harm, (2) Father failed to remedy the conditions causing removal, (3) Father willfully failed to support Child, (4) Child had been in foster care for fifteen of the most recent twenty-two months, and (5) termination of parental rights (TPR) was in Child's best interest. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52.

The family court may order TPR upon finding a statutory ground for TPR is met and TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2020).

The grounds must be proved by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

We find clear and convincing evidence showed Child was harmed, and due to the severity or repetition of the harm, it was not reasonably likely Father's home could be made safe within twelve months. *See* § 63-7-2570(1) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed as defined in [s]ection 63-7-20, and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months"). Dr. Walter James, who examined Child, found two "different fractures in [Child's] left radius and left ulna that were in two (2) different stages of healing." He concluded the "fractures [were] consistent with probable child abuse." The forgoing established Child was harmed. *See* S.C. Code Ann. § 63-7-20(6)(a)(i) (Supp. 2020) (providing "harm" occurs when a parent "inflicts or allows to be inflicted upon the child physical or mental injury or engages in acts or omissions which present a substantial risk of physical or mental injury to the child"). The testimony of Pam Stafford, who provided play therapy for Child, illustrated the severity and long-term impact of this abuse on Child. Although Child was only around a year old when she endured this abuse, she retained memories of it. Specifically, Stafford testified,

> She played through being injured by a door dozens of times. She slammed a door on a Lego house, on a Lego window that opened like a door, on the pretend kitchen stove, on the pretend kitchen cabinet, on the pretend kitchen refrigerator, on the dollhouse door and on a cabinet for the dollhouse. She opened and closed each of the doors repeatedly and exclaimed, "owie!" each time. She often grabbed her own arm after stating "ow" or "owie."

We acknowledge Trisha Christina Sweatt (Mother) pled guilty to cruelty to children based on Child's injuries, which implicates her as the perpetrator of the abuse. We also acknowledge Father did not have a prior case with the Department of Social Services (DSS), and he ultimately completed the requirements of his placement plan. However, Father neglected to take Child to the doctor for ten days after her injury even though her arm was swollen and she was not using it. Additionally, he continued to reside with Mother at the time of the TPR hearing. We are especially concerned about Child's safety with Mother, who had another child (Sibling) removed from her custody in 2014 due to a spiral fracture of her

right arm. Mother admitted during the TPR hearing that the doctors believed Sibling's fracture was caused by non-accidental trauma. Although Mother completed a placement plan as part of Sibling's case that included anger management, Child was subsequently harmed in a similar manner. Based on the injuries to Child and the prior, similar injury to Sibling, we have significant concerns about Child's safety in a home that includes Mother. Finally, we have concerns about domestic violence between Mother and Father (collectively, Parents). Based on the evidence presented, Parents were involved in a domestic dispute in May 2019—three months after the underlying merits hearing where they were ordered to complete placement plans—during which Father punched Mother in the jaw and pushed her out of a moving vehicle. Based on the severity and repetition of harm to both Child and Sibling, the fact that Father continues to live with Mother, and the domestic violence in the home, we find clear and convincing evidence showed it was not reasonably likely Father's home could be made safe within twelve months.

We also find clear and convincing evidence showed Father failed to remedy the conditions causing removal. *See* § 63-7-2570(2) (providing a statutory ground is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan by court order or by agreement between [DSS] and the parent[,] and the parent has not remedied the conditions which caused the removal"). Father was ordered to complete a placement plan following the February 14, 2019 merits hearing, but according to Mother, he had not begun court-ordered treatment as of May 2019.[1] Bentley Breaux, a DSS case manager, agreed the DSS file indicated that as of March 29 and May 3, 2019, Father had not expressed an interest in participating in treatment. Although Father had completed his placement plan by the time of the March 2020 TPR hearing, he admitted it was not until October 2019—more than six months after he was court-ordered to complete a placement plan—that he completed everything on the plan and his home was safe for Child. Based on Father's failure to timely begin and complete his placement plan, we find clear and

---

[1] Evidence presented at the hearing showed Father began drug treatment in July or August 2018 but did not complete it, and he was referred to parenting classes in December 2018 but attended only three times. The fact that DSS made referrals and Father began treatment prior to the February 2019 placement plan suggests Father and DSS may have agreed to a placement plan before the merits hearing, but that was not clearly established. Regardless, although Father had additional time before the merits hearing to complete treatment, he did not do so in a timely manner.

convincing evidence showed he failed to remedy the conditions causing removal. *See* S.C. Code Ann. § 63-7-2620 (2010) ("This article must be liberally construed in order to ensure prompt judicial procedures for freeing minor children from the custody and control of their parents by terminating the parent-child relationship.").

Further, clear and convincing evidence showed Child was in foster care for fifteen of the most recent twenty-two months. *See* § 63-7-2570(8) (providing a statutory ground for TPR is met when "[t]he child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months"). Father urges this court to decline to apply this ground because the merits hearing was not held until nine months after Child entered foster care, and the foster parents requested continuances in November 2019 and January 2020 that delayed the final disposition of this case. We are concerned about the nine-month delay in the merits hearing, which did not comply with the timeframes set forth in the removal statutes.[2] *See* S.C. Code Ann. § 63-7-1660(D) (2010) ("Upon receipt of a removal petition under this section, the family court shall schedule a hearing to be held within thirty-five days of the date of receipt to determine whether removal is necessary."); S.C. Code Ann. § 63-7-710(E) (2010) ("The hearing on the merits to determine whether removal of custody is needed . . . must be held within thirty-five days of the date of receipt of the removal petition. . . . A party may request a continuance that would result in the hearing being held more than thirty-five days after the petition was filed, and the court may grant the request for continuance only if exceptional circumstances exist. If a continuance is granted, the hearing on the merits must be completed within sixty-five days following receipt of the removal petition. The court may continue the hearing on the merits beyond sixty-five days without returning the child to the home only if the court issues a written order with findings of fact supporting a determination that the following conditions are satisfied . . . .").

Notwithstanding our concern, we find Father was not prejudiced by this delay because he was unable to provide a home for Child where she would be nourished and protected. *See S.C. Dep't of Soc. Servs. v. Sarah W.*, 402 S.C. 324, 336, 741 S.E.2d 739, 746 (2013) ("[S]ection 63-7-2570(8) may not be used to sever parental rights based solely on the fact that the child has spent fifteen of the past twenty-two months in foster care. The family court must find that severance is in the best interests of the child, and that the delay in reunification of the family unit is

---

[2] The information before this court indicated the merits removal hearing was scheduled but continued on June 18, 2018, and August 6, 2018. We found no explanation for the delay from August 6, 2018, until February 13, 2019.

attributable not to mistakes by the government, but to the parent's inability to provide an environment where the child will be nourished and protected."). Although the merits hearing was not held until nine months after Child entered foster care, Father was still refusing to engage in treatment three months after the merits hearing. Father acknowledged his home was not safe for Child until October 2019—seventeen months after Child entered foster care. Additionally, Father remained in the home with Mother; based on Mother's history, we find the home was inherently unsafe for Child. Although Father now contends he should have an opportunity to parent Child without Mother, he took no steps during the nearly twenty-two months Child lingered in foster care to establish a separate and safe home for her. Thus, we find this ground is met by clear and convincing evidence.[3]

Finally, viewed from Child's perspective, TPR is in her best interest. Due to the severity of her injuries, Child was not even attempting to crawl when she was removed from Parents at approximately one year old. Child continues to experience trauma based on her injuries, and the testimony established she was skittish and reluctant to be around Mother. Because of this, we cannot find it would be safe for Child's mental or physical health to return to a home where Mother is present. At the time of the TPR hearing, Child had been in foster care for nearly twenty-two months, and her foster parents wished to adopt her. Based on Child's need for permanency and stability in a safe environment, we find TPR is in her best interest.

**AFFIRMED.**[4]

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**

---

[3] Because clear and convincing evidence supports three statutory grounds for TPR, we decline to consider whether the family court erred in finding Father willfully failed to support Child. *See S.C. Dep't of Soc. Servs. v. Headden*, 354 S.C. 602, 613, 582 S.E.2d 419, 425 (2003) (declining to address a statutory ground for TPR when clear and convincing evidence supported another ground).

[4] We decide this case without oral argument pursuant to Rule 215, SCACR.